No. 16-5468

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| DEDE STRATTON | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | On Appeal From |
| v. | ) | E.D.Ky. No. 5:13-cv-00147 |
| | ) | |
| | ) | |
| PORTFOLIO RECOVERY | ) | |
| ASSOCIATES, LLC, | ) | |
| | ) | |
| Appellee | ) | |

---

## REDACTED REPLY BRIEF OF APPELLANT, DEDE STRATTON
## (FILED PURSUANT TO ORDER OF AUGUST 8, 2016)

---

Respectfully submitted,


/s/ Trevor W. Wells                           /s/ James R. McKenzie

TREVOR W. WELLS                        JAMES R. McKENZIE
MILLER WELLS PLLC                      JAMES R. McKENZIE
300 E. Main Street, Suite 360            ATTORNEY, PLLC
Lexington, Kentucky 40507              115 S. Sherrin Avenue, Suite 4
Tel: (859) 281-0077                         Louisville, Kentucky 40207
Fax: (859) 957-1889                         Tel: (502) 371-2179
twells@millerwells.com                     jmckenzie@jmckenzielaw.com

COUNSEL FOR APPELLANT,
DEDE STRATTON

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................. 3

ARGUMENT .................................................................................. 8

I.  The District Court Granted Summary Judgment to the
    Wrong Party ........................................................................... 8

    A. GEMB, PRA's Predecessor, Waived Its Right to Interest .... 8

        1. Kentucky Law, Governs the Waiver Issue ...................... 8

            a.  Judicial Estoppel Should Prevent PRA from
                Advocating that Utah Law Governs ........................ 8

            b.  PRA Cannot Enforce any Contractual Choice-
                Of-Law Provision ...................................................... 15

                i.  No Estoppel Should Prevent Stratton from
                    Contesting PRA's Claim to Contract Rights ....... 15

                ii.  PRA Did Not Acquire GEMB's Contract
                    Rights .................................................................. 17

                iii. The Purported Credit-Card Agreement is Not
                    Admissible Under Rule 803(6) ........................... 26

        2. GEMB Intentionally Relinquished Its Right to Collect
            Interest from Stratton ....................................................... 29

    B. The Record Warrants Summary Judgment for Stratton ..... 38

        1.  PRA Violated the FDCPA ................................................. 38

        2.  The Bona Fide Error Defense Offers PRA No Refuge ..... 38

CONCLUSION .................................................................... 40

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) ...... 33

*Appoini v. Sunshine Biscuits, Inc.*,
809 F.2d 1210, 1217 (6th Cir. 1987) .............................................. 15

*Atkins v. Rustic Woods Partners*,
525 N.E.2d 551, 555 (Ill. Ct. App. 1988)....................................... 30

*Bah. Sales Assoc., LLC v. Byers*,
701 F.3d 1335, 1343 (11th Cir. 2012) ............................................ 16

*Banque de Paris et des Pays-Bas v. Amoco Oil Co.*,
573 F. Supp. 1464, 1469-70 (S.D.N.Y. 1983) ................................. 24

*Baptist Physician Hosp. Org. Inc. v.
Humana Military Healthcare Servs.*,
481 F.3d 337, 352 (6th Cir. 2007) .................................................. 31

*Barrett v. Harrington*, 130 F.3d 246, 258 n.18 (6th Cir. 1997) ..... 34

*Bassett v. Nat'l Collegiate Athletic Ass'n*,
528 F.3d 426, 430 (6th Cir. 2008) .................................................. 9

*Bobbitt v. Milberg, LLP*, 285 F.R.D. 424, 427 (D. Ariz. 2012)....... 12

*Bobbitt v. Milberg LLP*,
801 F.3d 1066, 1072 n.4 (9th Cir. 2015) ........................................ 12

*BP Amoco Chem. Co. v. Flint Hills Resources, LLC*,
697 F. Supp. 2d 1001, 1021 (N.D. Ill. 2010) .................................. 28

*Cach of Colorado, LLC v. Lazarovwsky*, 7 N.Y.S.3d 240,
2014 WL 7177430, *3 (N.Y.Civ.Ct. Dec. 8, 2014)........................... 21

*Call Ctr. Techs., Inc. v.*
*Grand Adventures Tour & Travel Pub. Co.*,
2 F. Supp. 3d 192, 197-98 (D. Conn. Mar. 4, 2014) ........................ 11

*Conseco Fin. Servicing Corp. v. Wilder*,
47 S.W.3d 335, 344 (Ky. Ct. App. 2001) ......................................... 30

*Cordrey v. Euckert*, 917 F.2d 1460, 1465 (6th Cir. 1990) ............. 31

*Cox v. CA Holding Inc.*, 1:13-CV-01754,
2015 WL 631393 (S.D. Ind. Feb. 13, 2015) .................................... 24

*Cunningham Charter Corp. v. Learjet, Inc.*, 07-cv-233,
2012 WL 1565532, *3 (S.D. Ill. May 2, 2012) ................................. 28

*Fambrough v. Wal-Mart Stores, Inc.*,
611 F. App'x 322, 327 (6th Cir. 2015) ........................................ 27, 29

*Frost v. Resurgent Capital Sers. LP*, 5:15-cv-03987-EJD,
2016 WL 3479087, *4 (N.D. Cal. June 27, 2016) .......................... 37

*Gilman v. Waters, McPherson, McNeill, P.C.*,
271 F.3d 131, 140 (3d Cir. 2001) .................................................... 34

*Gitter v. Tenn. Farmers Mut. Ins. Co.*,
450 S.W.2d 780, 784 (Tenn. Ct. App. 1969) ................................... 31

*Good v. FFCC Columbus*, 2:14-cv-508,
2015 WL 11122105, *3 (S.D. Ohio Aug. 17, 2015) ........................ 27

*Greathouse v. Shreve*, 891 S.W.2d 387, 391 (Ky. 1995) ............... 31-32

*Grigson v. Creative Artists Agency L.L.C.*,
210 F.3d 524, 528 (5th Cir. 2000) .................................................. 15

*Harvey v. Great Seneca Fin. Corp.*,
453 F.3d 324, 331 (6th Cir. 2006) .................................................. 38

*In re Commonwealth Inst. Sec., Inc.*,
394 F.3d 401, 406 (6th Cir. 2005) .................................................. 13

*Karaha Bodas Co. v.*
*Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
364 F.3d 274, 293-94 (5th Cir. 2004) .............................................. 11-12

*Konstandtinidis v. Chen*, 626 F.2d 933, 937 (D.C. Cir. 1980) ....... 13

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*,
449 F. App'x 704, 709 (10th Cir. 2011) .......................................... 17

*McDonald v. Asset Acceptance, LLC*,
296 F.R.D. 513, 525 (E.D. Mich. 2013) .......................................... 34, 37

*McGowan v. Cooper Industries*,
863 F.2d 1266, 1273 (6th Cir. 1988) .............................................. 30

*Mullins v. Picklesimer*, 317 S.W.3d 569, 581 (Ky. 2010) .............. 32

*Nabors Completion & Prod. Servs. Co. v.*
*Chesapeake Operating, Inc.*,
2016 WL 2772279, *4 (5th Cir. May 12, 2016) .............................. 11

*Nationwide Mut. Ins. Co. v. Home Ins. Co.*,
330 F.3d 843, 846 n.3 (6th Cir. 2003) ............................................ 31

*Oxford Commercial Funding LLC v. Cargill Inc.*,
No. OO C 4996, 2002 WL 31455989 (N.D. Ill. Oct. 31, 2002)........ 24-25

*Riviera Fin. of Texas, Inc. v. Capgemini US, LLC*,
511 F. App'x 92, 94 (2d Cir. 2013).................................................. 23-24

*The Seeaandbee*, 102 F.2d 577, 581 (6th Cir. 1939) ...................... 13

*Simkus v. Calvary Portfolio Servs., LLC*, 11-cv-7425,
2012 WL 1866542 (N.D. Ill. May 22, 2012) ................................... 33

*Stratton v. Portfolio Recovery Assocs., LLC,*
770 F.3d 443, 448 (6th Cir. 2014) .................................................. 12

*Svea Fire & Life Ins. Co. v. Foxwell,*
234 Ky. 95, 27 S.W.2d 675, 678 (Ky. 1930) ................................... 29

*Swafford v. Unifund CCR Partners*, 13 C 1572,
2013 WL 5701045 (N.D. Ill. 2013) ................................................ 37

*Taylor & Gaskin, Inc. v. Chris-Craft Industries,*
732 F.2d 1273 (6th Cir. 1984) ....................................................... 31

*Terech v. First Resolution Mgmt. Corp.,*
854 F. Supp. 2d 537, 542 (N.D. Ill. 2012) ...................................... 33

*Thate v. General Motors Corp.*, No. 07-11370,
2008 WL 4372633, *7 (E.D. Mich. Sept. 19, 2008)........................ 22

*U.S. v. Dreer*, 740 F.2d 18, 20 (11th Cir. 1984)............................. 28

*U.S. v. Jenkins*, 345 F.3d 928, 935 (6th Cir. 2003) ....................... 29

*U.S. v. Towns*, 718 F.3d 404, 410 (5th Cir. 2013) ......................... 26

*Valley Const. Co., Inc. v. Perry Host Mgmt. Co., Inc.,*
796 S.W.2d 365, 367 (Ky. Ct. App. 1990) ...................................... 30

*Walzer v. Walzer,*
151 N.Y.S.2d 550, 559 (N.Y. App. Div. 1956) ................................ 19

*Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC,*
774 F.3d 1065, 1071-72 (6th Cir. 2014) .......................................... 26

## STATUTES

N.Y. U.C.C. § 109(c)(5) ................................................................... 22

N.Y. U.C.C. § 9-318 ....................................................................... 25

N.Y. U.C.C. § 9-404(a)(1) .............................................................. 23

N.Y. U.C.C. § 9-404(c) ................................................................... 23

## RULES

Fed. R. Civ. P. 12(b) ...................................................................... 14

Fed. R. Civ. P. 56(c)(2) .................................................................. 27

Fed. R. Evid. 803(6)(A) ................................................................. 26

## OTHER

OFFICIAL COMMENTARY TO N.Y. U.C.C. § 9-109, cmt. 5 .................. 19-20

## ARGUMENT

### I. The District Court Granted Summary Judgment to the Wrong Party.

#### A. GEMB, PRA's Predecessor, Waived Its Right to Interest.

##### 1. Kentucky Law Governs the Waiver Issue.

###### a. Judicial Estoppel Should Prevent PRA from Advocating that Utah Law Governs.

PRA claims that its motion-to-dismiss advocacy does not implicate judicial estoppel and maintains that it technically never took the position that Kentucky law governed its claim to interest. According to PRA, "*Ms. Stratton* injected KRS 360.010 into this action by stating . . . that PRA *did not have* the right to seek 8% prejudgment interest under KRS 360.010." *PRA's Brief* at 11 (emphasis added). PRA's motion to dismiss ostensibly merely "took the allegations in the Amended Complaint as true[,]" and "tested the sufficiency of that theory" by arguing that "Kentucky law allowed PRA to seek prejudgment interest." *Id.* at 19, 21.

Stated otherwise, PRA's defense to judicial estoppel is apparently that the Rules of Civil Procedure entitle it to take a consequence-for-it-free foray, which occupied hundreds of hours of work on the part of the

litigants and the federal courts, to examine whether Stratton's legal theories would hold water in the hypothetical, but now allegedly counterfactual, world where Kentucky law was the source of its entitlement to prejudgment interest. This dubious unbridled interpretation of Rule 12(b)(6) is unsupported by any citation to judicial-estoppel authority. Moreover, PRA could have litigated its later-identified defense position out of the gate at the Rule 12 stage because, without converting a motion to dismiss into a motion for summary judgment, a district court can consider contract documents referenced in the complaint and central to the claims. *See e.g., Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

But PRA's position is also revisionist. Even if its truncated state-court complaint "did not ***specifically*** seek statutory prejudgment interest under KRS 360.010[,]" *PRA's Brief* at 9 (emphasis added), PRA has not identified any state other than Kentucky in which the maximum rates of legal interest and post-judgment interest match those it claimed in its state-court Complaint.

While Ms. Stratton's Amended Complaint observed that "PRA's demand for 8% prejudgment interest ***corresponds to*** the statutory legal

rate of interest of 8% per annum set forth in KRS 360.010," *Amended Complaint*, RE 10, PageID# 92, ¶ 21 (emphasis added), the record debunks any suggestion that PRA simply accepted that premise for argument. *Some* of the *dozens* of references in PRA's filings to Kentucky's prejudgment-interest statute are ambiguous enough to be consistent with its carefully-worded description of the relevant 17-page section of its motion as arguing that "Kentucky law still ***allowed*** PRA to seek prejudgment interest at the legal rate" and "KRS 360.010 ***did not limit*** PRA's right to seek such interest." *See PRA's Brief* at 2 (emphasis added). But the few paragraphs that PRA devotes to this issue offer no explanation for the repeated occasions in which PRA affirmatively stated that its claimed entitlement to statutory interest was based upon Kentucky law.  From reading PRA's Brief alone, one would have no conception that PRA:

- represented to the district court that it "stated the amount ***it reasonably believed was due under Kentucky law*** and requested the same from a state court judge." *PRA's Reply to Response to Motion to Dismiss*, RE 16, PageID# 171.[1]

---

[1] *See also Defendant's Motion to Dismiss*, RE 12, PageID# 109 ("PRA made a ***routine request for statutory prejudgment interest*** [that] is awarded as a matter of right ***pursuant to KRS 360.010*** on liquidated claims." (bold and italicized emphasis added)).

- and represented to this Court in the prior appeal that its state-court lawsuit "requested that the state court award it 8% <u>statutory</u> prejudgment interest under Kentucky law[,]" and, in fact, "*requested the precise amount of interest allowed by Kentucky law*, [and] therefore *complied with KRS § 360.010* as a matter of law." (bold and italicized emphasis added). *Brief for Appellee Portfolio Recovery Associates, LLC* (13-6574), Document# 006111977700, Pages 14-15 & 23.

"A party that argues the applicability of one state's laws throughout a proceeding, even if the choice of law issue is never squarely addressed, may be prevented . . . from later arguing the applicability of a different state's laws." *Call Ctr. Techs., Inc. v. Grand Adventures Tour & Travel Pub. Co.*, 2 F. Supp. 3d 192, 197-98 (D. Conn. Mar. 4, 2014) (applying judicial estoppel as to a choice-of-law issue because of defendant's position in prior appeal). Judicial estoppel's appropriateness will vary with how vocally and repeatedly the party invokes one jurisdiction as the source of controlling law before changing its mind. *See, e.g., Nabors Completion & Prod. Servs. Co. v. Chesapeake Operating, Inc.*, 2016 WL 2772279, *4 (5th Cir. May 12, 2016) (holding that defendant was estopped where he had previously "categorically stated" that Texas law applied); *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 293-94

(5th Cir. 2004) (enforcing estoppel against party who "repeatedly represented" to arbitration tribunal and district court "that Swiss procedural law controlled[.]"). *Cf. Bobbitt v. Milberg, LLP*, 285 F.R.D. 424, 427 (D. Ariz. 2012) (declining to enforce choice-of-law estoppel based on defendant's position at motion-to-dismiss stage in "one-sentence perfunctory statement" that "consisted of conclusions . . . [with] no real analysis").[2]

In the previous appeal, PRA repeatedly cloaked its claim as grounded in Kentucky law. Both the district court's and this Court's opinions make it clear that they accepted *PRA's representations*, not some unspecified "allegation" in Stratton's Amended Complaint. *See Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 448 (6th Cir. 2014) ("PRA alleged that Stratton owed 8% interest rather than the 21.99% interest established in her contract with GE. **The 8% interest rate did not appear out of thin air – it is the default rate set by Kentucky's usury statute**, section 360.010 of the Kentucky Revised Statutes."); *Opinion*, RE 17, PageID# 177 ("PRA argues that its state

---

[2] The Ninth Circuit subsequently reversed on grounds that mooted the judicial-estoppel issue. *Bobbitt v. Milberg LLP*, 801 F.3d 1066, 1072 n.4 (9th Cir. 2015).

court action could not have violated the FDCPA because it properly requested statutory interest under Kentucky law." (citing *PRA's Motion to Dismiss*)).

"There is no set formula for assessing when judicial estoppel should apply." *In re Commonwealth Inst. Sec., Inc.*, 394 F.3d 401, 406 (6th Cir. 2005). But because one of the purposes underlying the judicial-estoppel doctrine is to "preserve the public confidence in the purity and efficiency of judicial proceedings[,]" *Konstandtinidis v. Chen*, 626 F.2d 933, 937 (D.C. Cir. 1980), an estoppel can arise from "conduct in litigation by which others have been misled[.]" *The Seeaandbee*, 102 F.2d 577, 581 (6th Cir. 1939).

Ms. Stratton does not contend that judicial estoppel will be in play every time a defendant pursues relief under Rule 12(b)(6). But, in this case, PRA affirmatively took a position in these Rule 12(b)(6) proceedings that led to the investment of significant litigation resources and caused this Court to invest substantial time and attention – including a published opinion that expressly adopted PRA's position as a foundational assumption of its analysis.  PRA's subsequent flip-flop was gamespersonship of the very type the judicial-estoppel doctrine

exists to address. And PRA's contention that "not allowing [it] to rely upon" the credit-card agreement presents a comparable "threat to judicial integrity[,]" *PRA Brief* at 21, reflects a failure to comprehend both the applicable doctrine and what actually happened here.[3] Although PRA downplays the extent of its argumentative inconsistency by ignoring what it actually said in the prior appeal, it unabashedly defends its actions as "the exact definition of proper judicial process, and in accord with the Federal Rules of Civil Procedure." *PRA's Brief* at 21 (citing Fed. R. Civ. P. 12(b)). If this is truly a "hate the game, not the player" situation, and Rule 12(b)(6) accommodates this type of sharp practice, then this Court should clarify that fact for the benefit of the circuit's bench and bar.

---

[3] Argument Section I(A)(1) is tailored to particular circumstances of this litigation; a different debt-buyer defendant who had not flip-flopped on the applicable legal basis for its interest claim and who purchased something more than a "receivable" and who could satisfy Rule 803(6)'s factual prerequisites could use an applicable credit-card agreement in its defense to the extent permitted by the governing substantive law.

### b. PRA Cannot Enforce Any Contractual Choice-of-Law Provision

#### i. No Estoppel Should Bar Stratton from Contesting PRA's Claim to Contract Rights.

Perhaps hoping that this Court will view the estoppel issue as a "wash,"[4] PRA contends that because Ms. Stratton's "entire theory of relief is based on her allegation that PRA took action not allowed by *contract*," she should be "estopped from arguing that PRA could not rely on *the Agreement*[.]" *PRA Brief* at 17, 21 (emphasis added). There is no merit in PRA's contention that equity should keep Ms. Stratton from arguing that PRA cannot utilize *this particular credit-card agreement*, and its choice-of-law provisions, in its defense in this case.

"The linchpin for equitable estoppel is equity-fairness." *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000). Although Ms. Stratton's Amended Complaint contains general references to the fact that the debt now at issue stems from a contract between Ms. Stratton and GEMB, and acknowledges the less-than-

---

[4] Tellingly, PRA does not even attempt an analysis of equitable estoppel's elements, which are plainly not applicable on these facts. *See Appoini v. Sunshine Biscuits, Inc.*, 809 F.2d 1210, 1217 (6th Cir. 1987) (stating elements of claim for equitable estoppel under federal common law).

Earth-shaking notion that GEMB was permitted to charge her interest on her credit-card debt,[5] at no point has she ever rested any of her claims upon the terms of any specific **A**greement. Thus, the central premise of PRA's argument is simply false.

Moreover, despite asserting that "Ms. Stratton is relying on the contract to form the basis of her claim," *PRA Brief* at 23, PRA ignores the inconvenient portion of ***the only circuit-level case it cites on this topic***, which reveals the flaw in its position. *See Bah. Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1343 (11th Cir. 2012) (citations omitted) (explaining that '[a] but-for relationship" alone "is not enough to warrant equitable estoppel" and that "for a party's claims to rely on a contract, the party must actually *depend on the underlying contract to assert the claims*." (emphasis added)).[6]

---

[5] *Amended Complaint*, RE 10, at PageID# 90, ¶ 1; *see also id.* at PageID# 93, ¶ 22. Also, nearly half of the "seven occasions" in Ms. Stratton's Amended Complaint that PRA inaccurately describes as alleging "that GE had the 'contractual right to collect interest on [Ms. Stratton's debt[,]'" *PRA's Brief* at 22 & n.74, actually state only that "**<u>PRA</u> had neither a contractual right nor a statutory right** to collect prejudgment interest[.]" *See Amended Complaint*, RE 10, at PageID# 93, ¶¶ 31, 33, 40 (emphasis added).

[6] *See PRA's Brief* at 22 (quoting *Byers* for a more generic proposition). *See also Byers*, 701 F.3d at 1343 ("For a plaintiff's claims to rely on the contract containing the arbitration provision, the contract must form

None of the authorities cited in PRA's Brief nor anything in Ms. Stratton's Amended Complaint warrants enforcing an estoppel in equity to prevent Ms. Stratton from litigating the issues in Argument Section I(A)(1) of her Brief.

### ii. PRA Did Not Acquire GEMB's Contract Rights.

Under the Bill of Sale and the Forward Flow Receivables Purchase Agreement ("FFRPA"), PRA purchased only the "receivable" *associated with* Ms. Stratton's Lowes credit-card *account*. Those documents reflect the selling (GEMB) and purchasing (PRA) parties' negotiated language,



the legal basis of those claims[.]" (emphasis added)) (*quoting Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 F. App'x 704, 709 (10th Cir. 2011) (per curiam)).



[redacted]

[redacted]

---

7 [redacted]

██████████████████████████████████████████████

█████████████████████████████████████████████ A defined

contractual term, moreover, neither disappears nor becomes a different

defined term simply because one places bold emphasis on prepositional

phrases that modify it. *See PRA's Brief* at 5-6; *id.* at 32. Nor can PRA

successfully expand the meaning of the FFRPA's language by

laundering it through testimony that characterizes the transaction

using more favorable words. *See PRA's Brief* at 34 (describing their

records custodian's affidavit's description of the transaction as

"unrefuted testimony").[8]

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████ *See, e.g.* OFFICIAL COMMENTARY TO N.Y.

U.C.C. § 9-109, cmt. 5 (after "an outright sale and transfer of ownership

of a receivable, the debtor seller contains no legal or equitable rights in

---

[8] Of course, even when some form of extrinsic evidence is admissible to aid in interpreting an agreement, this type of Monday-morning quarterbacking testimony is essentially never admissible. *Walzer v. Walzer*, 151 N.Y.S.2d 550, 559 (N.Y. App. Div. 1956) ("For, even where there is ambiguity in written contracts, it is not resolved by oral expressions of intention expressed unilaterally.").

the receivable that has been sold.”). [redacted]

[redacted]



[redacted]

---

[redacted]

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████

PRA's analysis of the implications of the Uniform Commercial Code is similarly off-base.  To begin with, PRA fails to explain away § 9-109(c)(5)'s exclusion of for-collection-only transactions from the scope of the New York Uniform Commercial Code's Article Nine.[13] ████████

███████████████████████████████████████████████████

███████████████████████████████████████████████*

██████████████████████████████████

─────────────────────────────────────────────────

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
█████████████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████ PRA loses

regardless of whether § 9-109(c)(5) presents an *additional* problem. PRA

fails, however, to offer any cogent explanation as to why § 9-109(c)(5) is

not otherwise a deal-breaker for its arguments grounded in the U.C.C.

Section 9-404(a) will not staunch the bleeding for PRA, which is

simply incorrect that "under the UCC, the assignment of a 'receivable'

also ***transfers*** 'the terms of the agreement between the account debtor

and assignor.'" *PRA's Brief* at 17 (emphasis added) (citing KRS § 355.9-

404). PRA not only simply ignores § 9-404(c)'s exclusion for consumer-

credit obligations, but again substitutes its own preferred language for

the actual text, which provides that "the rights of an assignee ***are***

***subject to*** . . . all terms of the agreement between the account debtor

and assignor[.]" N.Y. U.C.C. § 9-404(a)(1) (emphasis added).  Section 9-

404(a)(1)'s "subject to" language is unilateral and protects the account

debtor from attempts to short-circuit the rights it had under the

contract that gave rise to the debt; it does not grant an assignee of a

mere right to payment any reciprocal contractual rights. *See Riviera*

*Fin. of Texas, Inc. v. Capgemini US, LLC*, 511 F. App'x 92, 94 (2d Cir.

2013) ("Capgemini could not affirmatively sue a finance assignee such as Riviera for breach of contract. But it does not follow that Capgemini cannot use EC's breach as a defense against Riviera, or [ ] assert a claim for recoupment based on that breach. New York U.C.C. § 9-404(b) recognizes this distinction[.]"). *See also Banque de Paris et des Pays-Bas v. Amoco Oil Co.*, 573 F. Supp. 1464, 1469-70 (S.D.N.Y. 1983) (assignee "of a security interest in the receivable" did not "automatically take the . . . receivable free of all contractual limitations agreed to by the assignor and the account debtor" although it did not step into all contractual obligations).

*Cox v. CA Holding Inc.*, 1:13-CV-01754, 2015 WL 631393 (S.D. Ind. Feb. 13, 2015), is not a game-changer. It, like the other district-court-level dispositions that PRA relies upon, is only as persuasive as its underlying analysis, which appears to begin and end with the plaintiffs in that case having failed to "cite any authority for their proposition[.]" *Id.* at *13. None of the authorities on which *Cox* relied addressed a comparable circumstance. And, in fact, the closest of them factually, *Oxford Commercial Funding LLC v. Cargill Inc.*, No. OO C 4996, 2002 WL 31455989 (N.D. Ill. Oct. 31, 2002), only underscores Ms.

Stratton's reading of the applicable U.C.C. provisions by holding that a receivable assignee could not exploit that status to circumvent a contractual *defense raised by the account debtor. Id.* at \*3. *Cox* does, moreover, demonstrate that the debt-buying industry recognizes the distinction between rights to payment and underlying contractual rights as two of the agreements it addresses specifically conveyed "credit card accounts and receivable balances" and "all right, title, interest and obligations of Seller in and to the Accounts." *Cox* at \*3, \*5.

█████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████

          ████████████████████████████████████

█████████████████████████████████████

█████████████████████████ The underlying account and its contract were not part of the transaction between GEMB and PRA, and PRA therefore cannot defend its actions using any purported credit-card agreement.

### iii. The Purported Credit-Card Agreement is Not Admissible Under Rule 803(6).

Trial courts do not determine the admissibility of purported business records by performing a windshield appraisal of whether the documents in question appear sufficiently "trustworthy." In fact, a trial court has the discretion to admit a hearsay document under Rule 803(6)'s business-records exception *only after the proponent has shown a foundation* by demonstrating proof of the factual requirements in (A) – (E). *See U.S. v. Towns*, 718 F.3d 404, 410 (5th Cir. 2013). *See also Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1071-72 (6th Cir. 2014) (holding that "[t]o qualify for admission under Rule 803(6)," a business record must satisfy the rule's requirements). The factual record before the district court contains no evidence that the document PRA claims is the Credit-Card Agreement between GEMB and Stratton "was made at or near the time" that Ms. Stratton opened the Lowes account "by – or from information transmitted by – someone with knowledge." Fed. R. Evid. 803(6)(A). PRA does not seriously contest this omission.[14] As such, unless Rule 803(6)(A) is not a

---

[14] PRA dismisses this oversight because ███████████████████████████

requirement in this circuit for documents claimed to be "integrated business records," the district court abused its discretion when it considered the purported Agreement because PRA failed to show it could "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

This Court does not appear to have ever held that evidence satisfying Rule 803(6)(A)'s requirement is *unnecessary* for the introduction of an "integrated business record." And, in at least one case in which the offering party's foundation was found insufficient, a panel has implied that such testimony *is required. See Fambrough v. Wal-Mart Stores, Inc.*, 611 F. App'x 322, 327 (6th Cir. 2015). Courts in

---

███████████████████████ – from which it leaps to an assertion that "[a]ccordingly it is clear that PRA could meet the business records exception to the rule against hearsay at trial[.]" *PRA's Brief* at 30, n.92. The fact that the record contains *no indication of what* ███████████ ███████████ *would say* about the creation of this document, however, significantly complicates PRA's post hoc attempt to explain this document's admissible form. *See Good v. FFCC Columbus*, 2:14-cv-508, 2015 WL 11122105, *3 (S.D. Ohio Aug. 17, 2015) (refusing to consider hearsay consisting of a document that the plaintiff's "bare statement" consisting of a contention that the document "could be supported by affidavits from the letter's sender and the internet fax provider" that the court found "insufficient to explain how Exhibit B would be admissible at trial.").

other jurisdictions have expressly held that a party offering an "integrated business record" must still provide sufficient foundational evidence about the records practices of the third party from which it obtained the records. *See, e.g. BP Amoco Chem. Co. v. Flint Hills Resources, LLC*, 697 F. Supp. 2d 1001, 1021 (N.D. Ill. 2010) ("A document prepared by a third party may qualify as another business entity's business record under Rule 803(6) if that entity integrated the third-party record into its records and relied upon it in its day-to-day operations. *The proponent must also satisfy the other requirements of Rule 803(6).*" (emphasis added and collecting cases); *Cunningham Charter Corp. v. Learjet, Inc.*, 07-cv-233, 2012 WL 1565532, *3 (S.D. Ill. May 2, 2012) (stating that "it is generally accepted that the proponent of the document must also demonstrate the other requirements of Rule 803(6) are satisfied."). It would appear that the bench and bar could use this Court's guidance on this open question.

Rule 803(6)'s factual foundation requirements represent tried-and-true circumstantial indications that "determine[ ] whether the evidence possesses sufficient indicia of reliability and trustworthiness." *U.S. v. Dreer*, 740 F.2d 18, 20 (11th Cir. 1984). On the other side of the scale,

28

PRA offers only logistical complaints, *e.g.*, that applying Rule 803(6)'s plain terms would mean that "a custodian from the *original* business would *always* have to testify." *PRA's Brief* at 30, n.93 (emphasis in original). But, once again, a case that PRA cites for a different proposition clearly debunks a claim it makes a page or two later: the required foundational testimony can come from any qualified witness with the requisite knowledge. *See Fambrough*, 611 F. App'x at 326 (*quoting U.S. v. Jenkins*, 345 F.3d 928, 935 (6th Cir. 2003)).

### 2. GEMB Intentionally Relinquished Its Right to Collect Interest from Stratton.

Ms. Stratton met her burden to show by a preponderance of the evidence[15] that GEMB waived its contractual right to interest after it charged-off Ms. Stratton's account. At the very minimum, the evidence before the district court permitted a jury to reasonably infer that GEMB knowingly and voluntarily relinquished its contractual right to interest, which would permit it to return a verdict in Ms. Stratton's favor. The district court's summary judgment for PRA was accordingly improper

---

[15] *See, e.g. Svea Fire & Life Ins. Co. v. Foxwell*, 234 Ky. 95, 27 S.W.2d 675, 678 (Ky. 1930).

on its merits regardless of whether it also considered improper expert testimony in reaching its erroneous conclusion.[16]

PRA's Brief contains multiple attempts to "narrow the goalposts" to make Ms. Stratton's burden appear more onerous than it actually is. For example, PRA asserts that "in Kentucky, 'waiver will not be inferred lightly'" – and cites, without a signal, *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 344 (Ky. Ct. App. 2001). But the quotation is taken out of its context.[17] PRA also suggests that inferences are never sufficient "evidence" of waiver, which it alleges must be

---

[16] As far as the Cloninger Affidavit goes, PRA tellingly disclaims that the affidavit's evidence is necessary "to affirm the district court's decision." *PRA's Brief* at 48. The lone case PRA cites, *McGowan v. Cooper Industries*, 863 F.2d 1266, 1273 (6th Cir. 1988), does nothing to support its novel view that a court can consider expert "industry custom" evidence in deciding a waiver issue *as a question of law*. *McGowan* is not even a waiver case; its dicta suggests "industry custom" evidence would help *the jury* understand *the appropriate scope of the defendant's duty* in a *negligence case*. *McGowan*, 863 F.2d at 1273.

[17] *Wilder*, an arbitration case, cites *Valley Const. Co., Inc. v. Perry Host Mgmt. Co., Inc.*, 796 S.W.2d 365, 367 (Ky. Ct. App. 1990), another arbitration case, which, in turn, cites a case from Illinois's intermediate appellate court that reads: "Because arbitration is an efficient method of dispute resolution, waiver *of the right to arbitrate* is not lightly inferred." *Atkins v. Rustic Woods Partners*, 525 N.E.2d 551, 555 (Ill. Ct. App. 1988) (emphasis added)). PRA does not explain why a rule against "light inferences" in the arbitration-waiver context applies to waiver of other contractual rights.

accomplished by "clear, unequivocal, and decisive acts[.]" *PRA Brief* at 42-43. But the authority it cites applies inapplicable *Tennessee* common law. *See Baptist Physician Hosp. Org. Inc. v. Humana Military Healthcare Servs.*, 481 F.3d 337, 352 (6th Cir. 2007) (*citing Gitter v. Tenn. Farmers Mut. Ins. Co.*, 450 S.W.2d 780, 784 (Tenn. Ct. App. 1969)).

To Ms. Stratton's 3½ pages of argument that, in Kentucky, waiver is a question of fact that this Court should review as it does any other fact-bound summary-judgment determination, PRA responds with a citation to a single case – acknowledged in Ms. Stratton's Brief – holding otherwise in the arbitration-waiver context.[18] Elsewhere, however, PRA cites a parental-right-waiver case to frame the requisite showing under Kentucky law. *See PRA's Brief* at 39 (*citing Greathouse*

---

[18] Tracing the *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 846 n.3 (6th Cir. 2003) citation back to its origins eventually leads to *Taylor & Gaskin, Inc. v. Chris-Craft Industries*, 732 F.2d 1273 (6th Cir. 1984), which is not a waiver case at all. *See id.* at 1277 (reviewing the district court's determination that the facts did not "establish a case for the award of consequential damages under the applicable [Michigan] state statutes."). The precedential train appears to have derailed in *Cordrey v. Euckert*, 917 F.2d 1460, 1465 (6th Cir. 1990), where the Court cited *Taylor & Gaskin, Inc.* in characterizing the waiver determination as "a question of law or at least of mixed fact and law[.]"

*v. Shreve*, 891 S.W.2d 387, 391 (Ky. 1995)). But that citation is also significant because it illustrates that, under Kentucky precedent, whether a parent has waived his or her superior right to custody is, like other waiver questions, a ***factual determination***. *Mullins v. Picklesimer*, 317 S.W.3d 569, 581 (Ky. 2010); *see also Greathouse*, 891 S.W.2d at 390.

Ignoring PRA's discussion of various strawperson arguments, this case boils down to whether a jury could draw a reasonable inference of waiver from (i) GEMB's election not to accrue interest from the date of charge-off of Ms. Stratton's account through the time it sold the receivable associated with that account to PRA and (ii) its complementary decision not to send Ms. Stratton periodic statements after the charge-off date.[19] PRA characterizes as "unsupported" any

---

*Id.* (observing that "neither party discussed the proper standard of review on appeal.").

[19] PRA suggests Ms. Stratton's waiver evidence should be limited to the unchanged account balance referenced in her interrogatory answers and that she should not be permitted to make evidentiary use of the fact that GEMB stopped sending her periodic statements. *See*, *e.g.* *PRA's Brief* at 12-13, 39, 42. As the trial court recognized, however, these arguments about this evidence are inextricably intertwined. *See Opinion*, RE 99, PageID# 1134 ("Stratton's contention that GE's decision to not impose interest is evidence of waiver is, in reality,

inference of waiver from the conceded fact that the principal amount of Ms. Stratton's account balance was the same at its charge-off as when her receivable was sold to PRA. *PRA's Brief* at 41. But both *Simkus v. Calvary Portfolio Servs., LLC*, 11-cv-7425, 2012 WL 1866542 (N.D. Ill. May 22, 2012) and *Terech v. First Resolution Mgmt. Corp.*, 854 F. Supp. 2d 537, 542 (N.D. Ill. 2012) hold that a reasonable inference of the creditor's "intention to waive the right to charge interest post charge-off" is permissible when a debt's face value does not change over time. *Simkus* at *9-10. Although *Terech* does observe that the inference "may not be sufficient to *carry the day* at trial," 854 F. Supp. 2d at 542 (emphasis added), that observation implicitly recognizes that the evidence and reasonable inference from it are sufficient to produce a factual issue *for trial*. When it is unclear how a jury will view the facts, the evidence is, by definition, not "so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Especially in light of the fact that waiver is an issue of fact under Kentucky law, the record in this case created an

---

subsumed within the argument concerning periodic statements"); *see also id.*, PageID# 1135, n.13.

appropriate jury question as to GEMB's intent that made summary judgment inappropriate. *See Gilman v. Waters, McPherson, McNeill, P.C.*, 271 F.3d 131, 140 (3d Cir. 2001) (reversing summary judgment and observing that, under New Jersey law, "[q]uestions of waiver . . . are usually questions of intent, which are factual determinations that should not be made on a motion for summary judgment.").

Moreover, PRA commits a substantial argumentative misstep by ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████ *See PRA's Brief* at 18, 42, 44. By directing the Court's attention to ██████████████████████████ PRA primarily succeeds in gutting its own attempt to distinguish the record below from the one in *McDonald v. Asset Acceptance, LLC*, 296 F.R.D. 513, 525 (E.D. Mich. 2013).[20] ██████████████████████████████████

---

[20] On June 26, 2016, *i.e.*, after Ms. Stratton filed her principal brief, the *McDonald* parties reached a settlement in accordance with which the Court vacated its August 7, 2013 Opinion and Order. *McDonald* remains persuasive authority despite the subsequent history. *See*, *e.g.*, *Barrett v. Harrington*, 130 F.3d 246, 258 n.18 (6th Cir. 1997) ("Because this Court only looks to the case as persuasive authority, it is irrelevant that the case has been vacated[.]").

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████ PRA has no right to accrue, charge, or collect interest from Ms. Stratton for the thirteen-month period of time between the date that GEMB charged off Ms. Stratton's credit account and when it sold the receivable associated with her credit-card account to PRA. ██████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████

   ██████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

[redacted]

---

[redacted]

[redacted]

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████ PRA purchased Ms. Stratton's receivable "with full knowledge that the legally enforceable unpaid balance did not include post charge-off interest." *McDonald*, 296 F.R.D. at 527.

The FFRPA thus more than adequately distinguishes the authorities PRA cites. *See Swafford v. Unifund CCR Partners*, 13 C 1572, 2013 WL 5701045 (N.D. Ill. 2013) (noting the absence of "any allegation . . . that Citibank communicated to Defendants [debt buyers] that Citibank decided not to charge interest on Swafford's account and intended to waive that right."); *Frost v. Resurgent Capital Sers. LP*, 5:15-cv-03987-EJD, 2016 WL 3479087, *4 (N.D. Cal. June 27, 2016) (finding allegations of "general business practices" insufficient to state a claim). The factual record before the district court not only contained

conceded proof that GEMB did not post any interest to Ms. Stratton's account after charge-off. █████████████████████████████

████████████████████████████████████████████

██████████████████████████████████. As such, the summary judgment in PRA's favor was in error because the proof at a minimum would permit a jury to find the requisite waiver.

### B. The Record Warrants Summary Judgment for Stratton.

#### 1. PRA Violated the FDCPA.

The parties appear to agree that whether Ms. Stratton has proven her prima facie case will turn on the waiver issue.

#### 2. The Bona Fide Error Defense Offers PRA No Refuge.

One does not ordinarily provide a "direct response," *PRA's Brief* at 51, to the arguments in an opponent's brief by addressing a strawperson argument instead. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 331 (6th Cir. 2006) holds only that filing a debt-collection lawsuit without having actual possession of adequate documentary proof of the debt does not violate FDCPA provisions that prohibit deceptive practices and harassing, oppressing, or abusing persons in connection with the collection of a debt. *Harvey*, 453 F.3d at 331. Ms. Stratton is

unclear, therefore, how PRA's citation to *Harvey* "directly respond[s]" to her argument that, when PRA files suit without even examining the applicable documents, all the training and procedures in the world are worthless at avoiding lawsuits seeking wrongful interest amounts.

With all due respect to the United States District Court for the Southern District of Texas, Ms. Stratton stands by her citation of recent authority from *this Court* for the proposition that "the FDCPA's bona fide error defense provides no safe harbor for mistakes of state law[.]" *Appellant's Brief* at 76-77.

## CONCLUSION

Accordingly, Ms. Stratton respectfully asks that this Court REVERSE the district court's Judgment and remand this case for entry of judgment for her and a determination of her damages.


Respectfully submitted,


/s/ Trevor W. Wells                          /s/ James R. McKenzie
TREVOR W. WELLS                      JAMES R. McKENZIE
MILLER WELLS PLLC                    JAMES R. McKENZIE
300 E. Main Street, Suite 360          ATTORNEY, PLLC
Lexington, Kentucky 40507            115 S. Sherrin Avenue, Suite 4
Tel: (859) 281-0077                        Louisville, Kentucky 40207
Fax: (859) 957-1889                        Tel: (502) 371-2179
twells@millerwells.com                   jmckenzie@jmckenzielaw.com

COUNSEL FOR APPELLANT,
DEDE STRATTON

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Reply Brief for Appellant complies with the type-volume limitation provided in Fed. R. App. P. 32(a)(7)(B), the typeface requirements of Fed. R. App. P. 32(a)(5), and the type-style requirements of Fed. R. App. P. 32(a)(6). This Brief contains 6,961 words in 14-Point Century proportional type. I prepared the Brief using Microsoft Office Word 2016.

/s/ Trevor W. Wells
_____
COUNSEL FOR APPELLANT

## CERTIFICATE OF SERVICE

On August 15, 2016, a copy of the foregoing was served electronically on all parties of record in accordance with the method established under this Court's CM/ECF Administrative Procedures and Standing Order.

/s/ Trevor W. Wells
_____
COUNSEL FOR APPELLANT