No. 16-5468

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

DEDE STRATTON,

Plaintiff – Appellant,

v.

PORTFOLIO RECOVERY ASSOCIATES, LLC,

Defendant – Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY

**BRIEF FOR APPELLEE PORTFOLIO RECOVERY ASSOCIATES, LLC**

/s/ Joseph N. Tucker
Joseph N. Tucker
R. Brooks Herrick
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, KY 40202
(502) 540-2360

## FRAP 26.1 CORPORATE DISCLOSURE STATEMENT

Portfolio Recovery Associates, LLC, is a Delaware limited liability company and is a subsidiary of PRA Group, Inc., a publicly traded company. No other publicly held company owns 10% or more of stock of Defendant or PRA Group, Inc. Other than set forth herein, there is no publicly owned corporation, not a party to this case, that has a financial interest in the outcome of this case. There are no other persons or entities that may have an interest in the outcome of this case.

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellee Portfolio Recovery Associates, LLC ("PRA"), respectfully submits that the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. The issues before the Court on Plaintiff-Appellant Deed Stratton's ("Ms. Stratton") appeal are not complex, and the record facts and applicable law clearly demonstrate that Ms. Stratton's appeal must be denied. Therefore, oral argument is unnecessary in this case. However, PRA would welcome oral argument should the Court believe that it would be useful in resolving the issues raised on appeal.

# **TABLE OF CONTENTS**

FRAP 26.1 CORPORATE DISCLOSURE STATEMENT ................................. i

STATEMENT REGARDING ORAL ARGUMENT ........................................... ii

TABLE OF AUTHORITIES ....................................................................... vi

STATEMENT OF THE ISSUES ......................................................... 1

STATEMENT OF THE CASE ........................................................... 2

    I.      Background ....................................................................... 2

    II.     Factual and Procedural Summary........................................ 4

          A. Ms. Stratton's Credit Card Account with GE .............................. 4

          B. PRA's Forward Flow Agreement with GE Money Bank............. 4

          C. PRA Acquires Ms. Stratton's Credit Card Account
             and all Rights in the Credit Card Agreement ................................ 7

          D. PRA Files a State Court Lawsuit to Collect the Account ........... 9

          E. Ms. Stratton's FDCPA Complaint ................................... 10

          F. PRA's Motion to Dismiss, Appeal, and Remand ........................ 11

          G. Discovery ..................................................................... 12

          H. PRA's Motion for Summary Judgment.......................................... 14

          I. Ms. Stratton's Motion for Summary Judgment.............................. 15

          J. Ms. Stratton's New Theory of Relief................................. 15

          K. Ms. Stratton's Motion to Strike the Credit Card Agreement....... 16

          L. The District Court's Opinion & Order and Final Judgment ....... 16

SUMMARY OF ARGUMENT ................................................................. 16

ARGUMENT ........................................................................................ 18

I.    The District Court Properly Relied on Ms. Stratton's GE Credit
Card Agreement to Determine PRA's Request for Prejudgment
Interest was Lawful .......................................................................... 18

    A.    PRA Properly Argued that Utah Law Applies Pursuant to
the Choice of Law Provision in the Credit Card Agreement ............ 18

    B.    Ms. Stratton is Equitably Estopped from Arguing PRA
Cannot Introduce the Credit Card Agreement to
Support PRA's Defenses .................................................... 21

    C.    The Credit Card Agreement Would be Admissible at
Trial as a Business Record Excepted From the Rule
Against Hearsay .............................................................. 23

II.    The District Court Properly Concluded that PRA Acquired All Rights
Under the Credit Card Agreement ..................................................... 31

III.    Ms. Stratton Failed to Meet Her Burden of Proving GE Waived Its
Right to Charge Contract Interest ..................................................... 38

    A.    Ms. Stratton Bears the Burden of Proving Waiver ............................ 39

    B.    Ms. Stratton Can Only Satisfy Her Burden of Proof if She
Presents Evidence of a Signed Writing Waiving the Right
to Charge Contract Interest ................................................ 40

    C.    Ms. Stratton Has Not Put Forth Sufficient Evidence
Showing that GE Impliedly Waived its Right to Collect
Contract Interest ............................................................. 41

        1.    Ms. Stratton Presented No Evidence to Support Her
Claims of Implied Waiver .......................................... 42

        2.    Ms. Stratton Cannot Rely Upon the Evidence Presented
in Another Case to Support Her Claims ....................... 46

IV.   The District Court Did Not Abuse its Discretion by Considering
      Portions of Ms. Cloninger's Expert Report and Affidavit ........................... 48

V.    The District Court Properly Denied Ms. Stratton's Motion
      for Summary Judgment ..................................................................................... 51

VI.   Bona Fide Error ................................................................................................. 51

CONCLUSION ............................................................................................................ 54

CERTIFICATE OF COMPLIANCE ..................................................................... 55

DESIGNATION OF RELEVANT LOWER COURT DOCUMENTS ............ 56

CERTIFICATE OF SERVICE ................................................................................. 58

## <u>TABLE OF AUTHORITIES</u>

**Federal and State Cases**

*Amick v. Ohio Dep't of Rehab. & Corr.*, 521 F. App'x 354 (6th Cir. 2013) ............... 19

*Bah. Sales Assoc., LLC v. Byers*, 701 F.3d 1335 (11th Cir. 2012)................................ 22

*Baptist Physician Hosp. Org. Inc. v. Humana Military Healthcare Servs.*,
    481 F.3d 337 (6th Cir. 2007)......................................................................... 42-43

*Bey v. Midland Credit Mgmt.*, No. GJH-15-1329, 2016 U.S. Dist.
    LEXIS 38355 (D. Md. Mar. 23, 2016)............................................................... 28

*Bunce v. Portfolio Recovery Associates, LLC*, No. 14-CV-2149, 2014 U.S.
    Dist. LEXIS 159679 (D. Kan. Nov. 12, 2014)................................................ 43-44

*Burks v. O'Connor, Kenny Partners, Inc.*, 77 F. App'x 351 (6th Cir. 2003)................... 23

*Caudill v. Cavalry SPV I, LLC*, No. 14-CV-32-ART, 2014 U.S. Dist.
    117795 (E.D. Ky. Aug. 25, 2014)..................................................................... 35

*Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335 (Ky. Ct. App. 2001) ............... 43

*Cox v. CA Holding, Inc.*, No. 1:13-CV-01754, 2015 U.S. Dist.
    LEXIS 17820 (S.D. Ind. Feb. 13, 2015).................................................... 29-30,
        37-38

*Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595 (6th Cir. 1982)...................................... 19

*Fambrough v. Wal-Mart Stores, Inc.*, 611 F. App'x 322 (6th Cir. 2015) ...................... 27, 28

*FirstMerit Bank, N.A. v. Balin*, No. 11-C-8809, 2012 U.S. Dist.
    LEXIS 129747 (N.D. Ill. 2012)...................................................................... 30

*Frost v. Resurgent Capital Servs., L.P.*, No. 5:15-CV-03987, 2016 U.S.
    Dist. LEXIS 83317 (N.D. Cal. June 27, 2016) ................................................ 46

*Gates v. Asset Acceptance, LLC*, 801 F. Supp. 2d 1044 (S.D. Cal. 2011).................... 20

*Gerling & Assocs., Inc. v. Gearhouse Broadcast Pty. Ltd.*,
    625 F. App'x 289 (6th Cir. 2015) ..................................................... 27, 28

*Greathouse v. Shreve*, 891 S.W.2d 387 (Ky. 1995) ....................................... 39

*Green Tree Servicing, LLC v. Roberts*, No. CA2013-03-039, 2013 Ohio
    App. LEXIS 5602 (Ohio Ct. App., Butler Cnty. Dec. 9, 2013) ................. 28-29

*Guilmette v. Holmes*, 624 F.3d 286 (6th Cir. 2010) ....................................... 38

*Hare v. Hosto & Buchan, PLLC*, 774 F. Supp. 2d 849 (S.D. Tex. 2011) ................. 52, 53

*Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324 (6th Cir. 2006) ................................ 51

*Heintz v. Jenkins*, 514 U.S. 291 (1995) ......................................................... 52

*Irving Materials, Inc. v. Angelo Iafrate Constr. Co.*, No. 5:15-CV-00009,
    2015 U.S. Dist. LEXIS 129084 (W.D. Ky. Sept. 25, 2015) ......................... 33

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*,
    130 S.Ct. 1605 (2010)............................................................................ 51

*KFC Corp. v. Kazi*, No. 3:11-CV-00475, 2012 U.S. Dist. LEXIS
    180424 (W.D. Ky. Dec. 20, 2012)..................................................... 40, 41

*Martin v. Cavalry SPV I, LLC*, No. 13-CV-88-GFVT, 2014 U.S. Dist.
    LEXIS 43293 (E.D. Ky. Mar. 31, 2014) ........................................... 34-36

*McDonald v. Asset Acceptance, LLC*, 296 F.R.D. 513 (E.D. Mich. 2013) ................. 46, 47

*McGowan v. Cooper Indus.*, 863 F.2d 1266 (6th Cir. 1988)............................... 49

*Miller v. Javitch, Block & Rathbone, LLP*, 397 F. Supp. 2d 991
    (N.D. Ind. 1995)............................................................................... 44

*Miller Truck Lines, LLC v. Central Refrigerated Serv., Inc.*,
    781 F. Supp. 2d 488 (W.D. Ky. 2011) ............................................... 19-20

*Murphy v. Equifax Info.*, No. 12-CV-6409, 2013 U.S. Dist.
    LEXIS 178011 (E.D.N.Y. Dec. 11, 2013) ........................................... 44-45

*Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843 (6th Cir. 2003) .................. 39

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ............................................. 21

*Ohio Receivables, LLC v. Williams*, No. CA 25427, 2013 Ohio App.
    LEXIS 842 (Ohio Ct. App., Montgomery Cnty. Mar. 15, 2013) ............... 28

*Pangello v. Ky. Law Enforcement Council*, 106 S.W.3d 474 (Ky. Ct. App. 2003)......... 39

*Peak v. Kubota Tractor Corp.*, 559 F. App'x 517 (6th Cir. 2014) ................................ 23-24

*Rapp v. Green Tree Servicing, LLC*, 302 F.R.D. 505 (D. Minn. 2014) ........................ 22

*Sanders v. Armstrong*, No. 09-CV-036-JMH, 2011 U.S. Dist.
    LEXIS 13403 (E.D. Ky. Feb. 10, 2011) ........................................................ 24

*Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443 (6th Cir. 2014)................... 3,  11,
    12, 21, 41

*Surles v. Greyhound Lines, Inc.*, 474 F.3d 288 (6th Cir. 2007)...................................... 48

*Swafford v. Unifund CCR Partners*, No. 13-C-1572, 2013 U.S. Dist.
    LEXIS 149870 (N.D. Ill. Oct. 18, 2013) ....................................................... 46

*Terech v. First Resolution Mgmt. Corp.*, 854 F. Supp. 2d 537 (N.D. Ill. 2012) ............ 43

*Unifund CCR Partners v. Harrell*, No. 2015-SC-000117,
    2015 Ky. LEXIS 1926 (Ky. Sept. 24, 2015)................................................... 3

*Unifund CCR Partners v. Urban*, No. CV044000311S, 2005 Conn.
    Super. LEXIS 3481 (Conn. Super. Ct. Dec. 8, 2005) ................................... 44

*United States v. Carranco*, 551 F.2d 1197 (10th Cir. 1977)........................................ 28

*United States v. Childs*, 5 F.3d 1328 (9th Cir. 1993) .................................................. 28

*United States v. Collado*, 439 F. App'x 845 (11th Cir. 2011)....................................... 28

*United States v. Collins*, 799 F.3d 554 (6th Cir. 2015) ................................................ 23

*United States v. Flom*, 558 F.2d 1179 (5th Cir. 1977)................................................. 28

*United States v. Hollie*, No. 93-6021, 1994 U.S. App.
LEXIS 11537(6th Cir. May 16, 1994) ........................................................... 28

*United States v. Jakobetz*, 955 F.2d 786 (2d Cir. 1992) ................................. 28

*United States v. Parker*, 749 F.2d 628 (11th Cir. 1984) ................................. 30

*United States v. Ullrich*, 580 F.2d 765 (5th Cir. 1978) ................................... 28

*United States v. Veytia-Bravo*, 603 F.2d 1187 (5th Cir. 1979) ...................... 26-27

*Van Slyke v. Capital One Bank*, No. C 07-00671, 2007 U.S. Dist.
LEXIS 64015 (N.D. Cal. Aug. 17, 2007) ....................................................... 43

*Webb v. Midland Credit Mgmt.*, No. 11-C-5111, 2013 U.S. Dist.
LEXIS 43599 (N.D. Ill. Mar. 27, 2013) ......................................................... 20

*Wise v. Zwicker & Assocs., P.C.*, 780 F.3d 710 (6th Cir. 2015) ..................... 52

**Federal Statutes, Rules, and Regulations**

15 U.S.C. § 1692, *et seq.*,
Fair Debt Collection Practices Act ................................................................. *passim*

Fed. R. Civ. P. 12 ........................................................................................... 21

Fed. R. Civ. P. 56 ........................................................................................... 21

Fed. R. Evid. 702 ........................................................................................... 49

Fed. R. Evid. 803 ........................................................................................... 24-26

Uniform Retail Credit Classification and Account Management Policy,
65 Fed. Reg. 36903 (June 12, 2000) .............................................................. 45

**State Statutes**

KRS 355.9-109 ................................................................................................ 36, 37

KRS 355.9-404 .................................................................................. 36

KRS 360.010 .................................................................................. *passim*

N.Y. U.C.C. § 9-109 ..................................................................... 36, 37

N.Y. U.C.C. § 9-404 ......................................................................... 36

Utah Code Ann. § 15-1-1 .............................................................. 20, 38

**Secondary Sources**

Black's Law Dictionary (5th ed. 1979) ........................................... 35

Fed. R. Civ. P. 56 advisory committee's note on 2010 amendments ..................... 24

# STATEMENT OF THE ISSUES

1.      Whether PRA was entitled to argue in its Motion for Summary Judgment that the choice of law provision in Ms. Stratton's Credit Card Agreement with the original creditor, GE Money Bank ("GE"), required that Utah law, instead of Kentucky law, govern PRA's entitlement to pre-judgment interest.

2.      Whether Ms. Stratton's claim that PRA took action not allowed by the Credit Card Agreement, equitably estops her from arguing that PRA cannot rely on the Credit Card Agreement to prove PRA's actions were lawful.

3.      Whether the district court abused its discretion in admitting the Credit Card Agreement into evidence in support of PRA's Motion for Summary Judgment as an integrated business record under Fed. R. Evid. 803(6) and prevailing law.

4.      Whether GE assigned and sold to PRA all of GE's contractual rights in Ms. Stratton's GE credit card account (the "Account"), including the Credit Card Agreement.

5.      Whether the district court properly determined that Ms. Stratton failed to meet her burden of proof to establish that GE waived its right to collect contract interest.

6.      Whether the district court properly denied Ms. Stratton's Motion for Summary Judgment.

7.      Whether PRA was entitled to the bona fide error defense.

## STATEMENT OF THE CASE

### I.    Background

Ms. Stratton filed a putative class action against PRA for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA").[1] Ms. Stratton alleged that PRA, the assignee of Ms. Stratton's charged-off GE credit card Account, violated the FDCPA when PRA filed a state court Collection Complaint which sought 8% prejudgment interest on the balance due.[2] Ms. Stratton alleged that, although GE had the right to contract interest, GE waived that right before it sold the Account to PRA. Ms. Stratton's only evidence of waiver was that the Account balance at the time GE charged-off the Account, was the same as when GE later sold the Account to PRA.[3] Ms. Stratton further alleged that PRA had no statutory right to interest because KRS 360.010 does not allow an assignee to seek prejudgment interest at the statutory rate of 8% if the original creditor waived the right to contract interest.[4]

PRA moved to dismiss Ms. Stratton's Amended Complaint for failure to state a claim. PRA asserted that even if GE waived the right to contract interest, Kentucky law still allowed PRA to seek prejudgment interest at the legal rate, and that KRS 360.010 did not limit PRA's right to seek such interest.[5] The district court agreed.[6]

---

[1] (Amended Complaint, [D.E. 10], PageID# 90-96).
[2] (*See id.*).
[3] (*Id.* at ¶ 19, PageID# 92).
[4] (*Id.* at ¶ 24, 26, PageID# 93).
[5] (Motion to Dismiss, [D.E. 12], PageID# 101-17).
[6] (Opinion & Order, [D.E. 17], PageID# 175-90).

On Ms. Stratton's first appeal, a divided Court reversed.[7] In a case of first impression,[8] this Court held that **if** GE had waived the right to contract interest, the very specific "shall be bound" language in KRS 360.010 prohibited PRA, as GE's assignee, from seeking 8% interest at Kentucky's legal rate. This Court acknowledged that on remand, it "may be that the discovery process could reveal some contractual provision that entitles PRA to collect some sort of interest. . . ."[9]

On remand, Ms. Stratton took no depositions, obtained no discovery from GE, and failed to secure any evidence of waiver. Rather, she asserted that this Court's Opinion constituted the "law of the case," which ostensibly required entry of judgment in her favor.[10] Ms. Stratton was incorrect.

PRA, however, produced affidavit testimony and contractual provisions which established that: (1) PRA was GE's assignee; (2) PRA "stands in the shoes"[11] of GE; (3) GE did **not** waive the right to seek contract prejudgment interest before its sale and assignment of the Account to PRA; (4) PRA's request for prejudgment interest was authorized by contract and law; and (5) PRA therefore did not violate the FDCPA.

---

[7] (*Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443 (6th Cir. 2014)).
[8] This exact issue, concerning the interpretation of KRS 360.010, is currently on Discretionary Review to the Kentucky Supreme Court. *See Unifund CCR Partners v. Harrell*, No. 2015-SC-000117, 2015 Ky. LEXIS 1926 (Ky. Sept. 24, 2015).
[9] (*Stratton,* 770 F.3d at 448.)
[10] (Ms. Stratton's Motion for Summary Judgment, [D.E. 56-2], PageID# 551).
[11] (*Id.*)

Because Ms. Stratton failed to present any evidence and there are no disputed issues of material fact, the district court properly granted Summary Judgment for PRA, and properly denied Ms. Stratton's Motion for Summary Judgment.

Therefore, this Court should affirm the district court.

## II.  Factual and Procedural Summary

### A.  Ms. Stratton's Credit Card Account with GE.

On September 14, 2007, Ms. Stratton opened her Account. Ms. Stratton stopped making payments, and GE charged-off the Account. At the time of charge-off, her Account balance was $2,630.95, which was the same balance as when GE subsequently "[sold] or assign[ed] the account to PRA" 13-months later.[12]

Ms. Stratton's Account was governed by a "GE Money Bank Credit Card Agreement Retail Instalment Credit Agreement" ("Credit Card Agreement"),[13] which was not before this Court on Ms. Stratton's first appeal. The Credit Card Agreement included provisions allowing 21.99% interest, stated that Utah law applied, and included assignment and non-waiver clauses.[14]

### B.  PRA's Forward Flow Agreement with GE Money Bank.

Not long after charge-off, PRA and GE entered into a Forward Flow Receivables Purchase Agreement (the "Forward Flow Agreement" or "FFA"). The

---

[12] (Amended Complaint, [D.E. 10 at ¶¶ 1, 8, 19], PageID# 90, 91).
[13] (Privette Affidavit, [D.E. 83-2], PageID# 997-1000, 1004-1005).
[14] (Credit Card Agreement, [D.E. 54-3], PageID# 443-44).

4

FFA, which was not previously before this Court, is a confidential contract by which GE agreed to sell to PRA portfolios of charged-off credit card accounts.[15]

Importantly, the FFA explains why Ms. Stratton's Account Balance was the same at charge-off as it was at sale 13-months later. ███████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████ ████████████████

███████████████████████████████████████████████████

████████████████████████████████████[17]

Thus, the FFA allows GE to accrue post-charge-off interest, but explains that such post-charge-off interest would not be posted to an account balance.

The FFA is also clear that GE transferred to PRA all of GE's rights in the accounts being sold, including GE's contractual rights. Specifically, the FFA provides that GE ███████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

---

[15]  (Bill of Sale & Forward Flow Agreement, [D.E. 64 at 1-2], (filed under seal)).
[16]  (*Id.* at 2-4) (emphasis added).
[17]  (*Id.*).

███████████████████████████████████████████████████

████████████████[18]

    PRA also had the right to ████████████████████████

████████.[19] ███████████████████████████████████

███████████████████████████████████████████[20]

    The FFA required PRA to ████████████████████████

███████████████████████████ █████████████████████

██████████████████████████████████████.[22] ███

███████████████████████████████████████████

    Finally, the FFA's exhibits continually referenced GE's sale of "████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████[23]

---

[18] (*Id.* at 1-2) (emphasis added).

[19] (*Id.* at 1-2, 8, § 4.1(k), 5.2).

[20] (*Id.*) (emphasis added).

[21] (*Id.* at 10, § 5.2).

[22] (*Id.* at 13, 15, §§ 5.8, 7.2).

[23] (*Id.* at 26, 31, 33).

### C.    PRA Acquires Ms. Stratton's Credit Card Account and all Rights in the Credit Card Agreement.

Pursuant to a Bill of Sale,[24] PRA purchased all of GE's rights in a portfolio of charged-off credit card accounts which included Ms. Stratton's Account.[25] ███████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████[26]

To the extent there is any ambiguity in the sales documents, PRA's unrefuted testimony is that "PRA purchased [Ms. Stratton's] [A]ccount from GE . . . **thereby acquiring all right, title, and interest in and to the Account"**[27] – which necessarily includes all contract rights in the Credit Card Agreement.

PRA further provided evidence as to how GE transferred ownership of Ms. Stratton's Account from a witness who was "familiar with the input, storage and retrieval methods of the computer systems that PRA uses."[28] PRA's Tara Privette testified that in "connection with [GE's] sale of [Ms. Stratton's] Account, GE transferred copies of its electronic business records to PRA. At or near the time of receipt from GE, these records were loaded into PRA's computer systems and continue to be maintained in electronic format. Upon the sale of the Stratton Account

---

[24] (*Id.* at 1-2, 4).
[25]  (Privette Affidavit, [D.E. 83-2], PageID# 997-1000, 1004-1005).
[26] (Bill of Sale & Forward Flow Agreement, [D.E. 64 at 1-2], (filed under seal)).
[27] (Privette Affidavit, [D.E. 83-2], PageID# 997-1000, 1004-1005) (emphasis added).
[28] (*Id.*, PageID# 997).

to PRA, and the transmittal of GE's electronic business records relating to the Stratton Account, GE's records became, and are fully integrated with, PRA's business records." It was "PRA's regular business practice to receive, review, load, store, and rely on these records [from GE] in conducting its business," and that as "the custodian of these records, [Ms. Privette had] become personally familiar with them, and ha[s] verified their accuracy and applicability to the Stratton Account."[29]

Ms. Privette further testified that when "accounts are purchased by PRA, the seller transmits records related to these accounts to PRA, including such information as evidence of indebtedness (e.g. billing statements, credit agreements, etc.), as well as an electronic file ("Sales File") [also known as a "Notification File" or "load data"] containing the name, account number, social security number, address, open date, charge-off date, last payment date, interest rate at charge-off, principal balance, etc. ("Load Data") for each account purchased." Ms. Privette testified that GE sent to PRA the Notification File for Ms. Stratton's Account pursuant to the Bill of Sale.[30]

Ms. Privette also testified that if GE bank does not send all of the applicable documents at the time of sale, that "PRA reserves the right to request additional documents from [GE] as they become necessary."[31] Here, after "Ms. Stratton submitted discovery requests to PRA and, in accordance with the terms of [the FFA],

---

[29] (*Id.*, PageID# 997-998).
[30] (*Id.* at ¶ 7, Exhibit A, PageID# 998, and Notification File, [D.E. 54-5], PageID# 461) (emphasis added).
[31] (*Id.*, PageID# 997-998).

8

PRA requested from GE a copy of the Credit Card Agreement applicable to Ms. Stratton's Account. In response to PRA's specific request . . . GE provided a copy of the Credit Card Agreement to PRA."[32]

The Notification File, the Credit Card Agreement and the Account Statements all corroborate PRA's testimony and support the fact that GE transferred to PRA the contract rights under the Credit Card Agreement which was applicable to Ms. Stratton's Account.[33]

Because Ms. Stratton never deposed PRA or obtained any discovery from GE, PRA's evidence is not refuted.

### D.    PRA Files a State Court Lawsuit to Collect the Account.

In 2012, PRA filed its Collection Complaint to collect the Account. PRA did not specifically seek statutory prejudgment interest under KRS 360.010. Rather, PRA's Collection Complaint stated in its entirety:

---

[32] (*Id.* at ¶ 10; Exhibit B, PageID# 998, 999, 1004-05).
[33] (Notification File, [D.E. 54-5], PageID# 461).

**COMPLAINT**

*** *** *** *** ***

Comes the Plaintiff, the Creditor herein, by Counsel, and for its complaint, states as follows:

1.  That the account of DEDE STRATTON , bearing the account number ending in 0265, is in default.

2.  Said account is due and payable to Portfolio Recovery Associates, LLC, having acquired the account through sale, assignment or other legal means.

3.  The original creditor is  GE MONEY BANK, F.S.B..

4.  Said obligation is past due, and the Defendant(s) owes Plaintiff  $2,630.95, with interest thereon at the rate of 8% per annum from December 19, 2008  until date of judgment with 12% per annum thereafter until paid,  plus court costs.

WHEREFORE, Plaintiff demands judgment against the Defendant(s) for the sums plus interest set forth above and court costs.

MORGAN & POTTINGER, P.S.C.    34

### E.    Ms. Stratton's FDCPA Complaint.

In May 2013, Ms. Stratton filed her putative class action. Ms. Stratton alleged that PRA could not seek prejudgment interest for two reasons. First, Ms. Stratton alleged that PRA could not seek <u>contract</u> interest because GE waived its contractual right to charge interest on Ms. Stratton's Account after GE "did not charge or impose any interest on Ms. Stratton's . . . account . . . between charging off the account . . . and **the sale or assignment of the <u>account</u> to PRA**." Ms. Stratton never alleged that PRA was only transferred a "receivable" or that PRA did not receive any contract

---

[34] (State District Court Complaint, [D.E. 10-1], PageID# 97-98).

10

rights in the Account, only that GE had waived "its contractual right to collect interest on the debt" before GE assigned the Account to PRA.[35]

Second, Ms. Stratton injected KRS 360.010 into this action by stating seven (7) times in her Amended Complaint that PRA did not have the right to seek 8% prejudgment interest under KRS 360.010.[36] Ms. Stratton alleged that by seeking prejudgment interest to which PRA ostensibly was not entitled by contract or Kentucky law, PRA violated the FDCPA.[37]

### F.    PRA's Motion to Dismiss, Appeal, and Remand.

PRA moved to dismiss for failure to state a claim. PRA alleged that even if GE waived the right to contract interest, Kentucky law still gave PRA the right to seek 8% interest. The district court granted PRA's motion.[38]

A divided panel of this Court reversed, finding that Ms. Stratton had alleged "plausible FDCPA violations."[39] This Court assumed that, as Ms. Stratton alleged, Kentucky law applied to the case, that PRA stands in GE's shoes, and that GE had waived the right to seek contract interest.[40] This Court then held that under KRS 360.010, if the original creditor had a contractual right to charge interest, but then

---

[35] (Amended Complaint, [D.E. 10 at ¶¶ 1, 19-20, 22-24], PageID# 92) (emphasis added).

[36] (*Id.* at ¶¶ 21, 23, 24, 26, 29, 30, PageID# 92).

[37] (*Id.* at ¶ 52, PageID# 95-96).

[38] (Motion to Dismiss, [D.E. 12], PageID# 101-117); (Opinion & Order, [D.E. 17], PageID# 175-191).

[39] *Stratton v. Portfolio Recovery Associates, LLC*, 770 F.3d 443, 451 (6th Cir. 2014).

[40] *Id.* at 446-48 (noting that "[t]he plaintiff's allegations must be accepted as true," and that GE waived its right to collect contract interest "for purposes of this appeal").

waived that right, neither the original creditor (GE) nor its assignee (PRA), could seek any interest due to the specific "shall be bound" language of KRS 360.010.[41] This Court noted, however, "that the discovery process could reveal some contractual provision that entitles PRA to collect some sort of interest."[42]

### G.    Discovery.

In discovery, PRA produced and authenticated under oath, the Forward Flow Agreement, Ms. Stratton's Account Statements, the Bill of Sale, and the Notification File/Load Data which proved that PRA acquired all rights in the Account from GE.[43] PRA, however, did not have in its possession the Credit Card Agreement, so PRA requested it from GE in accordance with the FFA, and PRA's obligation to produce documents in its control.[44] Upon receipt, PRA authenticated the Credit Card Agreement under oath, and produced it to Ms. Stratton.[45]

PRA submitted discovery requests to Ms. Stratton to determine her evidence of waiver. Ms. Stratton replied that her only evidence of waiver was that the Account balance was the same at charge-off and at sale:

---

[41] *Id.* at 448.

[42] *Id.*

[43] (PRA's Discovery Responses, [D.E. 54-7], PageID# 497).

[44] *See* (Bill of Sale & Forward Flow Agreement, [D.E. 64 at 13, §§ 5, 5.3(a)(ii), (filed under seal)); Fed. R. Civ. P. 34(a)(1); Motion for Leave to File Amended Answer, [D.E. 41], PageID# 285).

[45] (PRA's Discovery Responses, [D.E. 54-7], PageID# 497).

3.    State all facts and information in your possession that support your assertion that GE Money Bank waived the right to charge interest on the Account after the Account was charged-off.

**ANSWER:**

PRA's own documents affirmatively show that GE did not accrue any interest on the Account after charging off the Account. In particular, Plaintiff notes that the affidavit of Dwayne E. Davis, as record custodian of PRA averred in pertinent part:

> 4.    According to the records transferred to the Account Assignee from Account Seller, and maintained in the ordinary course of business by the Account Assignee, there was due and payable from **DEDE STRATTON** ("Debtor and Co-Debtor") to the Account Seller the sum of **$2,630.95** with the respect to account number **ending in 0265** as of the date of **12/19/2008** with there being no known un-credited payments, counterclaims or offsets against the said debt as of the date of the sale.

And PRA furnished in discovery a document identified as

> **Data printed by Portfolio Recovery Associates, LLC from electronic records provided by GE MONEY BANK, F.S.B. pursuant to the sale of accounts from GE MONEY BANK, F.S.B. to Portfolio Recovery Associates, LLC on 1/15/2010**

This document states that the Original Creditor charged off the debt on December 19, 2008 and that the current balance on the debt as of January 15, 2010 was $2,630.00. [6]

As for the Credit Card Agreement, Ms. Stratton stated that if she ever received it, she threw it away,[47] but that the terms of the "credit card agreement that applied to the Account . . . gave the Original Creditor the right to charge interest."[48] Though she never acknowledged the Credit Card Agreement applied to her Account, she never provided evidence it did not. Ms. Stratton also never sought to depose GE or PRA.

In addition to its documents and affidavit testimony, PRA also disclosed an expert, Jane Cloninger, who explained the custom and practice of the credit card industry as it relates to post-charge-off interest.[49] Ms. Stratton never deposed Ms.

---

[46] (Ms. Stratton's Discovery Responses, [D.E. 54-5], Page ID# 452).

[47] (*Id.*, PageID# 457).

[48] (*Id.*, PageID# 450).

[49] (Cloninger Report, [D.E. 54-6 at §§ 3, 4], PageID# 487-88) (stating that the Office of the Comptroller of the Currency "recognized that charging interest post-charge off

13

Cloninger, did not challenge her qualifications and did not provide any evidence to rebut her opinions. However, the district court only used Ms. Cloninger's testimony to aid it "in interpreting the meaning of GE's conduct."[50]

### H.    PRA's Motion for Summary Judgment.

After the close of discovery, PRA sought summary judgment on all of Ms. Stratton's claims.[51] PRA explained, among other things, that the choice of law provision in Ms. Stratton's Credit Card Agreement required Utah law to be applied to the substantive issue of whether PRA was entitled to prejudgment interest at the legal rate. Under Utah law, PRA was entitled to seek up to 10% prejudgment interest.[52] PRA also established that Ms. Stratton could not meet her burden to prove that GE waived its right to seek contract interest because the Credit Card Agreement contains a "non-waiver" clause that requires a signed writing from GE, and her evidence of implied waiver based on the same Account balance at charge-off and sale was unavailing.[53]

Finally, PRA established that the Bill of Sale and FFA provided PRA all rights in the Credit Card Agreement, including the right to seek 21.99% contract interest. PRA also made clear that because Utah law allowed PRA to seek 10% prejudgment

---

was allowed as a matter of law, and that the collection of such post-charge-off interest by the original issuer must be allocated as income").

[50] (Opinion & Order, [D.E. 99] PageID# 1132).

[51] (PRA's Motion for Summary Judgment, [D.E. 54], PageID# 396-433).

[52] (*Id.*, PageID# 406-411).

[53] (*Id.*, PageID# 411-17).

interest, and GE did not waive the right to seek contract interest at 21.99%, PRA could lawfully seek the lesser rate of 8%, and its request for less interest than allowed by contract or law does not violate the FDCPA.[54]

## I.    Ms. Stratton's Motion for Summary Judgment.

Ms. Stratton also filed a Motion for Summary Judgment, but provided no new evidence and instead only cited to the facts set forth in her Amended Complaint.[55] To support her claim, Ms. Stratton relied almost entirely upon this Court's Opinion as the alleged "law of the case."[56] Ms. Stratton's Motion was also premised on her original theory that GE waived the right to contract interest because GE "did not charge . . . any interest on Ms. Stratton's . . . account . . . between charging off the account . . . and **the sale or assignment of the <u>account</u> to PRA**."[57] Indeed, Ms. Stratton's motion insisted that "'GE assigned its interest in Stratton's charged-off debt to PRA'" and that "PRA, as GE's assignee, . . . **simply stands in [GE's] shoes**."[58]

## J.    Ms. Stratton's New Theory of Relief

After reading PRA's Motion for Summary Judgment, recognizing that she had no evidence of waiver and that this Court's Opinion was not the "law of the case," Ms. Stratton pivoted to an entirely new theory. Thus, in response to PRA's Motion

---

[54] (*Id.*, PageID# 417-18).

[55] (Ms. Stratton's Motion for Summary Judgment, [D.E. 56-2], PageID# 546-47).

[56] (*Id.*, PageID# 550-55).

[57] (Amended Complaint, [D.E. 10 at ¶ 19], PageID# 92) (emphasis added).

[58] (Ms. Stratton's Motion for Summary Judgment, [D.E. 56-2], PageID# 550-55) (quoting *Stratton*, 770 F.3d at 445; *Whayne Supply Co. v. Morgan Constr.* Co., 440 S.W.2d 779, 782–83 (Ky.1969)) (emphasis added).

for Summary Judgment, for the first time, Ms. Stratton argued that PRA did not really stand in GE's shoes, because GE allegedly only assigned PRA a "receivable," but no other rights.[59]

### K.    Ms. Stratton's Motion to Strike the Credit Card Agreement.

To support her new theory of relief, Ms. Stratton also moved to strike the Credit Card Agreement arguing that it was inadmissible hearsay.[60] In Response, PRA provided an affidavit to establish that the Credit Card Agreement would be admissible under the business records exception.[61] The affidavit is explained above.[62]

### L.    The District Court's Opinion & Order and Final Judgment.

On March 21, 2016, the district court entered its order[63] and Ms. Stratton timely appealed.[64]

### SUMMARY OF ARGUMENT

Under an abuse of discretion standard, the district court properly denied Ms. Stratton's motion to strike the Credit Card Agreement because PRA proffered a qualified witness whose testimony was sufficient under the integrated business records

---

[59] (Ms. Stratton's Motion for Summary Judgment, [D.E. 56-2], PageID# 542, 552); (Response in Opposition to PRA's Motion for Summary Judgment & Motion to Strike, [D.E. 59 at 4-5, 38], (filed under seal)); Ms. Stratton's Reply in Support of her Motion for Summary Judgment, [D.E. 85], PageID# 1042-56).

[60] (Response in Opposition to PRA's Motion for Summary Judgment & Motion to Strike, [D.E. 59 at 4-5, 38], (filed under seal)).

[61] (Response in Opposition to Motion to Strike, [D.E. 83], PageID# 987-90); (Privette Affidavit, [D.E. 83-2], PageID# 997-1005).

[62] (*Supra*, pp. 9-10).

[63] (Opinion & Order, [D.E. 99], PageID# 1109-43).

[64] (Notice of Appeal, [D.E.102], Page ID# 1147).

exception, and Ms. Stratton failed to produce any evidence the Credit Card Agreement was unreliable.[65]

PRA was entitled to rely on Utah law in its Motion for Summary Judgment because the Credit Card Agreement was not before this Court on PRA's Motion to Dismiss. On the other hand, because Ms. Stratton claimed that PRA took action not allowed by the Credit Card Agreement, she was equitably estopped from arguing that PRA could not rely on the Agreement to prove its actions were lawful.

The district court properly rejected Ms. Stratton's argument - raised for the first time in her Response to PRA's Motion for Summary Judgment[66] and plainly contrary to the allegations in her Amended Complaint - that PRA was not entitled to GE's contract rights because PRA allegedly purchased only a "receivable."[67] Ms. Stratton failed to satisfy her burden because the FFA and Bill of Sale assigned to PRA ███ ████████████████████████████████████ and PRA therefore stood in GE's shoes. Also, under the U.C.C., the assignment of a "receivable" also transfers the "terms of the agreement between the account debtor and assignor."[68]

---

[65] *See* (Opinion & Order, [D.E. 99], PageID# 1116-19).

[66] (Response in Opposition to PRA's Motion for Summary Judgment & Motion to Strike, [D.E. 59 at 5], (filed under seal)).

[67] In direct contrast to Ms. Stratton's Amended Complaint which specifically alleged that "did not charge or impose any interest on Ms. Stratton's . . . account … between charging off the account . . . and the sale or assignment of the account to PRA." Ms. Stratton never alleged that PRA did not receive any contract rights in the Account, only that GE had waived "its contractual right to collect interest on the debt" before GE sold the Account to PRA.

[68] (Opinion & Order, [D.E. 99], PageID# 1122 (citing KRS 355.9-404)).

Kentucky law also requires enforcement of the Credit Card Agreement's Utah choice of law provision to the substantive issue of prejudgment interest. Unlike KRS 360.010, Utah Code § 15-1-1 does not include the "shall be bound" language. Therefore, Utah law allowed PRA to seek up to 10% prejudgment interest, even if GE waived its right to collect contract interest.[69] Accordingly, "PRA did not violate the FDCPA by attempting to collect interest at a rate below [Utah's] statutory rate."[70]

Finally, Ms. Stratton's only evidence of waiver is insufficient because, in part,

███████████████████████████████████████████████████████

███████████████████████████████████████████████████[71]

Accordingly, this Court should affirm the district court's decision in its entirety.

## ARGUMENT

I.    **The District Court Properly Relied on Ms. Stratton's GE Credit Card Agreement to Determine PRA's Request for Prejudgment Interest was Lawful.**

A.    **PRA Properly Argued that Utah Law Applies Pursuant to the Choice of Law Provision in the Credit Card Agreement.**

Ms. Stratton incorrectly asserts that PRA cannot rely on the Credit Card Agreement's Utah choice of law provision to determine whether PRA could legally seek prejudgment interest. Ms. Stratton asserts that because PRA's Motion to Dismiss argued PRA was entitled to prejudgment interest under Kentucky law, PRA was

---

[69] (*Id.*, PageID# 1128).
[70] (*Id.*, PageID# 1129).
[71] (*Id.*, PageID# 1135-36 (citing the FFA, [D.E. 61-3 at 3], (filed under seal))).

ostensibly estopped to argue on Summary Judgment that Utah law applies. Ms. Stratton is wrong.

The purpose of the judicial estoppel doctrine is "to protect the integrity of the judicial process." *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982). Indeed, "[t]he essential function of judicial estoppel is to prevent ***intentional*** inconsistency." *Id.* (emphasis added).

Here, there are no inconsistencies. As set forth above, Ms. Stratton's Amended Complaint argued PRA was not entitled to prejudgment interest under KRS 360.010. PRA's Motion to Dismiss tested the sufficiency of that theory, and PRA argued that even if all allegations in the Amended Complaint were true, Kentucky law allowed PRA to seek prejudgment interest. *Amick v. Ohio Dep't of Rehab. & Corr.*, 521 F. App'x 354, 362 (6th Cir. 2013) ("The motion to dismiss tests only the facial sufficiency of the complaint. . . . [R]eversal . . . merely allows proceedings to continue.").

This divided Court disagreed with PRA and remanded the case to allow the proceedings to continue. On remand, discovery revealed contractual provisions that entitled PRA to seek prejudgment interest in its Collection Complaint.

Specifically, the Credit Card Agreement between GE and Ms. Stratton included a Utah choice of law provision. Kentucky law is clear that entitlement to prejudgment interest is a substantive issue governed by a contractual choice of law provision. *Miller Truck Lines, LLC v. Central Refrigerated Serv., Inc.*, 781 F. Supp. 2d 488, 497 (W.D. Ky. 2011) ("[O]ur [Kentucky] Supreme Court said that in a breach of contract claim,

prejudgment interest is due as damages, thereby indicating our judiciary's view that prejudgment interest is substantive." (citing *Felix v. Lykins Enterprises, Inc.*, No. 2009-CA-000312-MR, 2010 WL 4137276, *5 (Ky. Ct. App. Oct. 22, 2010))).

Accordingly, with the benefit of the Credit Card Agreement - which required Utah substantive law to be applied to the issue of prejudgment interest - PRA properly moved for summary judgment and established that, even if GE waived the right to contract interest, PRA sought less interest that it was entitled to under Utah law, which is not an FDCPA violation. *See* Utah Code Ann. § 15-1-1 ("[T]he legal rate of interest for the loan or forbearance of any money, goods, or chose in action shall be 10% per annum."); *Gates v. Asset Acceptance, LLC*, 801 F. Supp. 2d 1044, 1048 (S.D. Cal. 2011) ("Although the state court complaint sought an incorrect rate of interest, it sought less interest than the amount owed. Such a misstatement is not material [and therefore not an FDCPA violation]."); *Webb v. Midland Credit Mgmt.*, No. 11-C-5111, 2013 U.S. Dist. LEXIS 43599, at *1-12 (N.D. Ill. Mar. 27, 2013) (seeking less than amount due does not violate the FDCPA).

Allowing PRA to rely upon the Credit Card Agreement, which was properly produced and authenticated in discovery, in a Motion for Summary Judgment but which was not part of the record on PRA's Motion to Dismiss, poses no threat to the

integrity of the judicial process. That is the exact definition of proper judicial process, and in accord with the Federal Rules of Civil Procedure.[72]

To maintain the integrity of the judicial process, the judicial estoppel doctrine prevents inconsistent court determinations. *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001). Ms. Stratton's argument fails to recognize, however, that there has been no prior determination that Kentucky law applies, only a determination that the Amended Complaint states a "plausible" claim. *Stratton*, 770 F.3d at 451. Like PRA, this Court's prior Opinion simply took the allegations in the Amended Complaint as true. *See Stratton*, 770 F.3d at 446 ("The plaintiff's allegations must be accepted as true. . ."). Accordingly, there is "no risk of inconsistent court determinations, and thus . . . little threat to judicial integrity." *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001).

The only possible threat to judicial integrity is not allowing PRA to rely upon a document that was properly produced during discovery simply because it accepted Ms. Stratton's allegations as true when it employed its rights under Federal Rule of Civil Procedure 12. Accordingly, judicial estoppel is simply not applicable to this case.

### B.    Ms. Stratton is Equitably Estopped from Arguing PRA Cannot Introduce the Credit Card Agreement to Support PRA's Defenses.

Because Ms. Stratton's entire theory of relief is based on her allegation that PRA took action not allowed by contract, she was properly estopped from arguing that PRA could not rely on the contract to defend itself.

---

[72] *See* Fed. R. Civ. P. 12(b); 56.

"In essence, equitable estoppel precludes a party from claiming the benefits of some of the provisions of a contract while simultaneously attempting to avoid the burdens that some other provisions of the contract impose." *Bah. Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1342 (11th Cir. 2012). Equitable estoppel applies "when the signatory to the contract relies on the terms of the contract to assert his or her claims against the nonsignatory." *Id.* Equitable estoppel has been invoked to keep a party to a contract from attempting to dodge a choice-of-law provision included in a contract, which is what Ms. Stratton attempts to do here. *See Rapp v. Green Tree Servicing, LLC*, 302 F.R.D. 505, 515 (D. Minn. 2014) ("[E]quitable estoppel prevents a signatory to a contract from . . . relying on the contract in asserting a claim against a non-signatory, but then . . . arguing that the non-signatory cannot enforce a provision of that same contract (such as an arbitration *or choice-of-law clause*.") (emphasis added)).

Here, Ms. Stratton claims that PRA violated the FDCPA because PRA did not have a right to seek contract interest under the terms of GE's Credit Card Agreement with Ms. Stratton. Though Ms. Stratton alleges she only referenced the Agreement in an off-hand remark in her Amended Complaint paraphrasing the FDCPA,[73] Ms. Stratton's Amended Complaint notes on at least seven occasions that GE had the "contractual right to collect interest on [Ms. Stratton's] debt."[74] She also expressly alleged that GE "[sold] or assign[ed] the account to PRA'" and alleged that PRA

---

[73] *See* (Appellant Brief, p. 39).
[74] (Amended Complaint, [D.E. 10 at ¶¶ 1, 20, 22, 24, 31, 33, 40, 52], PageID# 90-96).

could not collect interest because GE allegedly waived that right.[75] Ms. Stratton's discovery responses also noted that the terms of the contract speak for themselves.[76]

Because Ms. Stratton is relying on the contract to form the basis of her claim, she cannot now take the position that the very contract at issue should not be admitted into evidence. PRA must be allowed to produce and rely on the applicable contract to prove that the contract's terms do indeed speak for themselves. Ms. Stratton should not be allowed to argue that PRA violated the FDCPA by exceeding its contractual authority, but prevent PRA from defending itself by reference to the very contract at issue. Accordingly, the district court correctly concluded that Ms. Stratton is equitably estopped from arguing that PRA may not rely on the Credit Card Agreement to defend itself.

### C. The Credit Card Agreement Would be Admissible at Trial as a Business Record Excepted From the Rule Against Hearsay.

Under an abuse of discretion standard,[77] the district court properly considered Ms. Stratton's Credit Card Agreement pursuant to the integrated business records exception to the evidentiary rule against hearsay.[78] PRA produced and authenticated

---

[75] (*Id.* at ¶¶ 1, 8, 19, PageID# 90-91).

[76] (Ms. Stratton's Discovery Responses, [D.E. 54-5], Page ID# 449).

[77] *United States v. Collins*, 799 F.3d 554, 583 (6th Cir. 2015) ("We conclude that the district court neither erred nor abused its discretion by admitting pseudoephedrine purchase records as business records under Federal Rule of Evidence 803(6)"); *Burks v. O'Connor, Kenny Partners, Inc.*, 77 F. App'x 351, 355 (6th Cir. 2003) ("The court reviews a trial court's evidentiary rulings under an abuse of discretion standard").

[78] "The standard of review for admission of hearsay evidence is somewhat unclear. . . . [De novo review] and [abuse of discretion review] are not in fact inconsistent, because

the Credit Card Agreement under oath in discovery.[79] When PRA's use of the Credit Card Agreement was challenged, PRA submitted the affidavit of Tara Privette, PRA's Senior Vice President of Core Operations,[80] proving that the Credit Card Agreement would be admissible at trial. It is well settled that when a party claims evidence relied upon in support of a motion for summary judgment is not admissible, the proponent of the evidence may "explain the admissible form that is anticipated." Fed. R. Civ. P. 56 advisory committee's note on 2010 amendments. If the proponent of the evidence provides a proper explanation, the Court may rely upon the evidence in considering a motion for summary judgment. *See Sanders v. Armstrong*, No. 09-CV-036-JMH, 2011 U.S. Dist. LEXIS 13403, at *8 (E.D. Ky. Feb. 10, 2011) (refusing to grant a motion to strike where the proponent of the evidence "made the requisite showing that each of these exhibits could be presented in an admissible form at trial").

Here, Ms. Privette's affidavit establishes that PRA could meet all the requirements of the business records exception at trial because the Credit Card Agreement was incorporated into the business records of PRA. Accordingly, the district court properly relied upon the Credit Card Agreement.

Federal Rule of Evidence 803(6) provides that records of regularly conducted activity are admissible:

---

it is an abuse of discretion to make errors of law or clear errors of factual determination." *Peak v. Kubota Tractor Corp.*, 559 F. App'x 517, 521 (6th Cir. 2014) (citations omitted).

[79] (Ms. Stratton's Discovery Responses, [D.E. 54-5], PageID# 497).

[80] (Privette Affidavit, [D.E. 83-2], PageID# 997-1005).

Records of Regularly Conducted Activity. A record of an act, event, condition, opinion, or diagnosis if:

(A)    the record was made at or near the time by – or from information transmitted by – someone with knowledge;

(B)    the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C)    making the record was a regular practice of that activity;

(D)    all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E)    neither the source of information nor the method or circumstances of preparation indicate lack of trustworthiness.

Based upon the evidence PRA submitted, it is undisputed that:

(1)    PRA purchases accounts from creditors such as GE in the ordinary course of PRA's and GE's business;[81]

(2)    As part of these purchases, GE maintains evidence of its customers indebtedness in the ordinary course of its business, and GE transmits such information to PRA in the form of "Notification Files" or "Load Data" files in the in the ordinary course of their business;[82]

(3)    PRA purchased Ms. Stratton's GE Account;[83]

(4)    GE generated, maintained and transmitted the Stratton Account information to PRA in the ordinary course of GE's business with PRA;[84]

---

[81] (*Id.* at ¶ 5, PageID# 997-98).

[82] (*Id.*).

[83] (*Id.* at ¶ 7, PageID# 998).

[84] (*Id.* at ¶ 8-9, PageID# 998-99).

(5)    The documents and information GE sent to PRA were integrated into PRA's records when PRA received them from GE, and PRA maintained the information and records in the ordinary course of PRA's business;[85]

(6)    In the Forward Flow Agreement, PRA reserved the right to request additional documents from GE as they became necessary;[86]

(7)    PRA requested that GE provide the Credit Card Agreement applicable to Ms. Stratton's Account in response to a discovery request from Ms. Stratton;[87] and

(8)    GE provided to PRA the Credit Card Agreement applicable to Ms. Stratton's Account in the ordinary course of PRA's and GE's business, which was also integrated into PRA's records in the ordinary course of PRA's business and then produced to Ms. Stratton.[88]

The mere fact that PRA obtained the Agreement during litigation, does not bring it within the litigation exception of Rule 803(6) because the Credit Card Agreement was clearly not prepared in anticipation of litigation. The Credit Card Agreement was created well in advance of any litigation, sent to Ms. Stratton before she defaulted on her Account, and it is a routine, necessary business document regularly relied upon in the credit card industry. Such a routine document, prepared well before any litigation, has the indicia of trustworthiness that goes to the very heart of the business records exception. *See United States v. Veytia-Bravo*, 603 F.2d 1187, 1189

---

[85] (*Id.*).

[86] (*Id.* at ¶ 6, PageID# 998).

[87] (*Id.* at ¶ 10, PageID# 998-99).

[88] *Compare* (*Id.*, [D.E. 83-2 at Exhibit B], PageID# 1003-05), *with* (Credit Card Agreement, [D.E. 54-3], PageID# 443-44).

(5th Cir. 1979) ("The primary emphasis of Rule 803(6) is on the reliability of trustworthiness of the records sought to be introduced, and the trial judge exercises broad discretion in determining the inadmissibility.").

Furthermore, the district court did not abuse its discretion in determining the Credit Card Agreement met the integrated business record exception to the rule against hearsay. In fact, the Sixth Circuit cases Ms. Stratton cited recognize that integrated business records satisfy the business records exception.

Indeed, both *Fambrough v. Wal-Mart Stores, Inc.,* 611 F. App'x 322 (6th Cir 2015) and *Gerling & Assocs., Inc. v. Gearhouse Braodcast Pty. Ltd.,* 625 F. App'x 289 (6th Cir. 2015) recognize that a company need not have created the document sought to be introduced in order for it to qualify as a business record of that company. In *Fambrough,* this Court explicitly stated:

> ***Courts have generally agreed*** that Rule 803(6) does ***not*** require that the document actually be prepared by the business entity proffering the document . . . [and] would allow an **incorporated document** to be admitted based upon ***the foundation testimony of a witness with first-hand knowledge*** of the record keeping procedures ***of the incorporating business***, even though the business did not actually prepare the document.

611 F. App'x at 329 (emphasis added).

Similarly, in *Gerling*, this Court stated, "A document is admissible by a company under Rule 803(6) – ***even if someone else created that document*** – so long as a witness testifies that it was ***integrated into the company's records*** and ***relied upon***

*in [the company's] day-to-day operations*." 625 F. App'x at 293 (emphasis added).[89]

This Court should also ignore the primary case on which Ms. Stratton relies, *Ohio Receivables, LLC v. Williams*, No. CA 25427, 2013 Ohio App. LEXIS 842 (Ohio Ct. App., Montgomery Cnty. Mar. 15, 2013), because that case is an outlier from Ohio state court which contradicts the *Fambrough* and *Gerling* decisions, and which contradicts every other Ohio state court that has considered the issue. *See Green Tree Servicing, LLC v. Roberts*, No. CA2013-03-039, 2013 Ohio App. LEXIS 5602, at *12-14 (Ohio Ct. App., Butler Cnty. Dec. 9, 2013) (specifically rejecting *Ohio Receivables* and taking the "opportunity to expressly adopt the adoptive business records exception in accordance with the First, Eighth, and Tenth Appellate Districts [of Ohio], as well as

---

[89] *See also United States v. Hollie*, No. 93-6021, 1994 U.S. App. LEXIS 11537, at *8-9 (6th Cir. May 16, 1994) (recognizing that invoices created by a third party could become business records of another company if integrated into that company's business records and relied upon by that company in its regular course of business); *United States v. Jakobetz*, 955 F.2d 786, 801 (2d Cir. 1992) ("Even if the document is originally created by another entity, its creator need not testify when the document has been incorporated into the business records of the testifying entity."); *United States v. Flom*, 558 F.2d 1179, 1182 (5th Cir. 1977) (finding that the admission of invoices received and held by defendant in its regular course of business, but which were prepared and sent by another company, was proper where foundation testimony was offered that the invoices were received and held in the regular course of business); *United States v. Carranco*, 551 F.2d 1197, 1200 (10th Cir. 1977) (holding that freight bills, though drafted by other companies, were business records of a shipping company because they were "adopted and relied upon by" the shipping company); *United States v. Ullrich*, 580 F.2d 765, 772 (5th Cir. 1978); *United States v. Childs*, 5 F.3d 1328, 1334 (9th Cir. 1993); *United States v. Collado*, 439 F. App'x 845, 848 (11th Cir. 2011); *Bey v. Midland Credit Mgmt.*, No. GJH-15-1329, 2016 U.S. Dist. LEXIS 38355 (D. Md. Mar. 23, 2016) (allowing credit card agreement between debtor and original creditor to be entered into evidence by debt buyer's records custodian).

various federal circuits [citations omitted]. To find otherwise would overcomplicate litigation and unnecessarily increase its expense by forcing an entity to bring in a large number of witnesses to prove the existence of one chain of business records.").

In this case, PRA provided sufficient foundation testimony from a qualified witness with first-hand knowledge that PRA regularly incorporated and kept GE documents, including credit card agreements, into its business records in the ordinary course of their business, and that PRA relied on documents received from GE in the ordinary course of the parties' business operations, which included requesting documents during litigation. Thus, PRA has shown that the Credit Card Agreement is an "incorporated document" that qualifies for the business record exception to the rule against hearsay.

Again, PRA's Tara Privette testified that she had a familiarity with PRA's methods of retaining business records, that "GE's records became, and are now fully integrated with, PRA's business records [and that it] is PRA's regular business practice to receive, review, load, store, and rely on these records [from GE] in conducting its business."[90] Under an abuse of discretion standard, her testimony is therefore sufficient as a matter of law. *See Cox v. CA Holding, Inc.*, No. 1:13-CV-01754, 2015 U.S. Dist. LEXIS 17820, at *23-24 (S.D. Ind. Feb. 13, 2015) ("In addition to testifying regarding her knowledge of CACH's recordkeeping, Ms. Coston states that the third-party records 'have been incorporated into the business records of CACH, and are

---

[90] (Privette Affidavit, [D.E. 83-2 at ¶ 9], PageID# 998).

relied upon by CACH in conducting its business. This is enough to meet the business records hearsay exception set forth in Fed. R. Ev. 803(6)"); *FirstMerit Bank, N.A. v. Balin*, No. 11-C-8809, 2012 U.S. Dist. LEXIS 129747, at *3 (N.D. Ill. 2012) ("[A]lthough [the declarant] did not work for [the third party] and was not a custodian of [the third party's] records, [the declarant] would constitute a qualified witness since the records of [the third party] became [the defendant's] records as the successor bank.").

Ms. Stratton's claim that to meet the integrated business records exception a party must provide "proof about the *original* custodian's recordkeeping practices"[91] is incorrect.[92] "That the witness and his company had neither prepared the certificate nor had first-hand knowledge of the preparation does not contravene Rule 803(6)." *United States v. Parker*, 749 F.2d 628, 633 (11th Cir. 1984).[93]

PRA met the business records exception because the Credit Card Agreement was prepared well in advance of litigation, Ms. Stratton likely received it but threw it

---

[91] (Appellant's Brief, at 55).

[92] ███████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████.
*See* (Bill of Sale & Forward Flow Agreement, [D.E. 64 at 15], (filed under seal)). Accordingly, it is clear that PRA could meet the business records exception to the rule against hearsay at trial and that the Credit Card Agreement was properly considered by the district court.

[93] Furthermore, Ms. Stratton's assertion that proof of the original custodian's recordkeeping practices must be provided would render the adoptive business records exception to the rule against hearsay a nullity. If proof of the original custodian's recordkeeping practices were required, a custodian from the *original* business would *always* have to testify. That is plainly not the law.

away, PRA demonstrated that it received the Agreement from GE in the ordinary course of their business and pursuant to GE's contractual obligation to produce it, and that PRA regularly relies "relies upon the accuracy of the document incorporated and that there are other circumstances indicating the trustworthiness."[94] The district court also properly found that the Credit Card Agreement could be admitted because Ms. Stratton provided no evidence that it was unreliable. As the district court stated, the Credit Card Agreement had the same interest rate as the Account Statements and the Notification File, and it also had the same branch number, "C822," in the Notification file which matched the Credit Card Agreement to Ms. Stratton's Account.[95]

Accordingly, the district court properly concluded that the Credit Card Agreement would be admissible at trial, and, thus, properly considered it on a PRA's motion for summary judgment.

## II.   The District Court Properly Concluded that PRA Acquired All Rights Under the Credit Card Agreement.

Ms. Stratton's new argument, that PRA did not acquire GE's contract rights but only the right to collect Ms. Stratton's debt, is based solely on the Forward Flow Agreement's use of the defined term ███████" Ms. Stratton argues that a

---

[94] (Opinion & Order, [D.E. 99 at 6], PageID# 1114) (quoting *Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338, 1343 (Fed. Cir. 1999)).
[95] (*Id.* at 8-10, PageID# 1116-18).

31

receivable is not an account, and that no contract rights are assigned if only a receivable is assigned. Ms. Stratton is wrong.

Ms. Stratton's argument fails because the term "Receivables" was one of many defined terms and provisions in the FFA. The FFA, Bill of Sale, Credit Card Agreement, and unrefuted testimony establish that PRA is an assignee that stands in GE's shoes, and that PRA acquired all of GE's contractual rights in the Account, including GE's rights in the Credit Card Agreement.

GE's Bill of Sale expressly states that GE ████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████[96] The Forward Flow Agreement goes on to state that ████████████████████████████████████████████████████████████████ ███████████████ The Forward Flow Agreement defines a ████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████[97] The only proper interpretation of the FFA and Bill of Sale is that through ████████████████████ ████████████████████████████████████████████████████████████████

[96] (Bill of Sale & Forward Flow Agreement, [D.E. 64 at 1-2], (filed under seal)).
[97] (Id.) (emphasis added).

███████████████████████████████████████████████.[98] ██████████████

████████████████████████████████████████████████████████████

████████████  Thus, GE sold to PRA everything it owned in connection with Ms. Stratton's Account.

The interpretation that PRA stands in GE's shoes, and that PRA obtained all contract rights in the Credit Card Agreement, is supported by harmonizing all remaining provisions of the Bill of Sale and Forward Flow Agreement such that each provision has meaning. *See Irving Materials, Inc. v. Angelo Iafrate Constr. Co.*, No. 5:15-CV-00009, 2015 U.S. Dist. LEXIS 129084, at *15, (W.D. Ky. Sept. 25, 2015) ("[W]hen interpreting a contract, 'conflicting clauses should be construed to harmonize with each other if the harmonization can consistently and reasonably be done.'"). For example, the FFA required ████████████████████████████████ ███████████████████████████████████████████████████.[99] ████████████████████████████████████████████████████ ████████████████████████████████.

Additionally, the FFA noted ████████████████████████████████ ██████████████████████████████████████████████[100] ██████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

[98] (*Id.*)
[99] (*Id.* at 13, 15, §§ 5.8, 7.2.)
[100] (*Id.* at 1-2, 8, § 4.1(k), 5.2.)

████████████████████ ████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████.[101]

Unless GE transferred all of its rights in Ms. Stratton's Account to PRA, it would be impossible to reconcile and harmonize the FFA.

Additionally, to the extent there is any ambiguity in the meaning of the documents, PRA provided unrefuted testimony from Ms. Privette that by virtue of the Forward Flow Agreement, Bill of Sale and Notification File/Load Data, "PRA purchased [Ms. Stratton's] [A]ccount from GE … **thereby acquiring all right, title, and interest in and to the Account**," which necessarily included all contract rights.[102]  Indeed, until reading PRA's Motion for Summary Judgment, Ms. Stratton interpreted the sales documents the same way.[103]

Two district courts in this Circuit have also addressed this **exact** language in GE's Bill of Sale, and concluded that GE transferred all rights in the accounts, including the rights included in GE's Credit Card Agreement. In *Martin v. Calvary SPV I, LLC*, No. 13-CV-88-GFVT, 2014 U.S. Dist. LEXIS 43293 (E.D. Ky. Mar. 31, 2014), the court was faced with an identical GE bill of sale that stated:

---

[101] (*Id.* at 26, 31, 33).
[102] (Privette Affidavit, [D.E. 83-2], PageID# 997-1000, 1004-1005) (emphasis added).
[103] *See supra*, pp. 15-16.

> GE  'hereby transfers, sells, conveys, grants, and delivers to Buyer, it successors and assigns, without recourse except as set forth in the Agreement, all right, title and interest in and to the Receivables . . . delivered by Seller to Buyer on each Transfer Date. . . .'

*Martin*, 2014 U.S. Dist. LEXIS 43293, at *13-14.

Based on this identical language, the *Martin* court concluded that "**the plain meaning** of the words indicates that **GE transferred 'all right'** to Martin's account as set forth in the Agreement." *Id.* at *14 (emphasis added); *see also Caudill v. Cavalry SPV I, LLC,*  No. 14-CV-32-ART, 2014 U.S. Dist. LEXIS 117795, at *11 (E.D. Ky. Aug. 25, 2014) (rejecting consumer's argument that the debt buyer did not acquire GE's contractual rights but, rather, just the "receivables,"—the right to collect on the debt).

While Ms. Stratton refers to Black's Law Dictionary's definition of a "receivable," she ignores that "Receivable" is a defined term in the FFA. Furthermore, Black's Law Dictionary defines a receivable "in bookkeeping, [as] the name of an account which reflects a debt due."[104] To the extent there is any ambiguity in the FFA, in order to harmonize all terms, application of the "bookkeeping" definition shows GE's use of the term "Receivables" was a mere descriptive name of the charged-off accounts being sold with outstanding debts, to distinguish those GE accounts that were not charged-off and not being sold.

---

[104] Black's Law Dictionary 1140 (5th ed. 1979).

The district court here and in *Martin*, *supra*, also noted that the U.C.C. supports their interpretation of the FFA and Bill of Sale. KRS 355.9-404 provides that when a "receivable" is assigned, the assignment is subject to all "terms of the agreement between the account debtor and assignor." *Martin*, 2014 U.S. Dist. LEXIS 43293, at *15-16; (Opinion & Order, [D.E. 99 at 14], PageID# 1122). Thus, both courts gave little weight to the argument that even an assignment of a mere receivable, rather than an account, did not include contract rights.

To counter this position, Ms. Stratton asserts that because the ███████████ ██████████████████████, the district court's reference to the Kentucky U.C.C. is misplaced and that New York's U.C.C. law is allegedly different than Kentucky U.C.C. law. Ms. Stratton is simply incorrect. New York and Kentucky U.C.C. law are virtually identical. Indeed, New York Uniform Commercial Code § 9-404 almost exactly mirrors KRS 355.9-404 word for word.

Additionally, while Article 9 under both New York and Kentucky law do not apply to the "assignment of **accounts**, . . . which is for the purpose of collection only,"[105] this section of the U.C.C. does nothing to support Ms. Stratton's argument. Ms. Stratton's argument is that GE did not assign an "account," but assigned only a "receivable." By the U.C.C.'s plain language, the assignment of a "receivable" for collection is <u>not</u> excluded from the application of Article 9, only the assignment of

---

[105] *See* N.Y. U.C.C. § 9-109(d)(5) and its identical counterpart, KRS 355.9-109(4)(e) (emphasis added).

"accounts" is excluded from Article 9.[106] Thus, the district court in this case and in *Martin* properly referenced KRS 355.9-404, which is virtually identical to New York's counterpart, to determine that even if PRA was assigned only a "receivable," all of GE's contract rights came with it.

Finally, just last year, yet another district court rejected the exact same argument pertaining to yet another GE contract. In *Cox v. CA Holding Inc.*, No. 1:13-CV-01754, 2015 U.S. Dist. LEXIS 17820 (S.D. Ind. Feb. 13, 2015), CACH purchased delinquent credit card accounts from GE. *Id.* at *34-35. The plaintiffs argued that "CACH only purchased the receivables . . . , and not the actual account, and so cannot show that they are entitled to take advantage of the agreement between [the debtor] and GE Money Bank." *Id.* at 35. The *Cox* court rejected the argument that the sale of receivables somehow limited the debt buyer's right to enforce all of the terms of the consumer credit agreements:

> Plaintiffs have not cited any authority for their proposition that a purchaser of account receivables is not entitled to the rights in the account agreement. **To the contrary, this argument has been rejected by numerous courts.**

*Cox*, 2015 U.S. Dist. LEXIS 17820, at *40. (emphasis added) (citing *Nat'l City Bank, Nw. v. Columbian Mut. Life Ins. Co.*, 282 F.3d 407, 409 (6th Cir. 2012); *Oxford Commercial Funding, LLC v. Cargill, Inc.*, 2002 U.S. Dist. LEXIS 21254, 2002 WL 31455989, *3 (N.D. Ill. 2002) ("In cases addressing the assignment of accounts receivables, courts

---

[106] (*Id.*).

have held that the assignee 'stands in the shoes of the assignor' and is 'subject to contract defenses or claims of the account debtor arising by virtue of the terms of the contract out of which the receivable was created.'")).

Therefore, even if Ms. Stratton is correct that PRA only purchased a "receivable" (which she is not), that would not limit PRA's right to enforce the terms of Ms. Stratton's Credit Card Agreement with GE. Thus, this Court should affirm the district court's entry of summary judgment in favor of PRA.

## III.  Ms. Stratton Failed to Meet Her Burden of Proving GE Waived Its Right to Charge Contract Interest.

If this Court determines that PRA obtained rights in the Credit Card Agreement, it need not go any further. This is because Ms. Stratton does not appeal the district court's finding that the choice of law provision in the Credit Card Agreement is enforceable or that PRA properly sought prejudgment interest under Utah Code Ann. § 15-1-1. Thus, if PRA may rely on the Credit Card Agreement, this Court must affirm the district court's finding that Utah law applies and that PRA properly sought prejudgment interest under Utah Code Ann. § 15-1-1. *See, e.g.*, *Guilmette v. Holmes*, 624 F.3d 286, 292 (6th Cir. 2010) ("Our general rule is that an appellant abandons all issues not raised and argued in its initial brief on appeal.").

Even if Kentucky law applies, however, Ms. Stratton failed to meet her burden of proving her original theory that GE waived its right to collect contract interest.

## A.    Ms. Stratton Bears the Burden of Proving Waiver.

To prove her claim of waiver, Ms. Stratton was required to prove that GE made a "knowing and voluntary surrender or relinquishment of a known right." *Greathouse v. Shreve*, 891 S.W.2d 387, 391 (Ky. 1995) (citations omitted). Because Ms. Stratton is the party relying upon waiver, she bears the burden of proof. *See Pangallo v. Ky. Law Enforcement Council*, 106 S.W.3d 474, 479 (Ky. Ct. App. 2003) ("The burden of proof is upon the person relying upon waiver.").

Ms. Stratton's attempt to create a jury question on the issue of waiver is flawed. The issue of waiver is a mixed question of law and fact. When determining waiver, the only task for a jury is to establish the facts. It is for the court to determine whether those facts amount to waiver. *See Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 846 n.3 (6th Cir. 2003) (stating that whether the facts amount to waiver is a legal question for the court).

Here, Ms. Stratton's only evidence that GE waived its right to collect contract interest is that the principal amount of Ms. Stratton's Account balance was the same amount at charge-off as on the date the Account was sold to PRA.[107] PRA does not dispute that fact. Thus, there is nothing for a jury to decide. The only remaining question – for the Court – is whether that single fact amounts to a waiver. It does not.

---

[107] (Ms. Stratton's Response to Interrogatory No. 3, [D.E. 54-5 at 6-7], PageID# 452-53).

**B.    Ms. Stratton Can Only Satisfy Her Burden of Proof if She Presents Evidence of a Signed Writing Waiving the Right to Charge Contract Interest.**

Due to the non-waiver clause in GE's Credit Card Agreement, Ms. Stratton could have only satisfied her burden of proof if she produced a writing signed by GE. In other words, the non-waiver clause makes any evidence of implied waiver insufficient as a matter of law. Because Ms. Stratton failed to produce a signed writing in which GE waived its right to interest, Ms. Stratton cannot satisfy her burden of proof, and the Court must affirm the district court's decision.

Ms. Stratton's Credit Card Agreement contained a non-waiver clause:

> We may, in our sole discretion, ***choose not to exercise any right under this Agreement***, including the right to impose the full amount of any charge, ***without waiving that right***. Any ***waiver*** of a right ***by us must be in writing and signed by us***.[108]

It is well accepted that non-waiver clauses are valid and enforceable in Kentucky. *See, e.g.*, *KFC Corp. v. Kazi*, No. 3:11-CV-00475, 2012 U.S. Dist. LEXIS 180424, at *9 (W.D. Ky. Dec. 20, 2012) ("Under Kentucky law, . . . [n]on-waiver clauses are routinely upheld as enforceable." (citing *Universal C.I.T. Credit Corp. v. Middlesboro Motor Sales, Inc.*, 424 S.W.2d 409, 411 (Ky. 1968) (upholding a non-waiver clause). Under Kentucky law, a non-waiver clause precludes a finding of implied waiver and, in the absence of evidence of an express waiver, there can be no finding

---

[108] (Credit Card Agreement, [D.E. 54-3 at § 18], PageID# 444) (emphasis added).

of waiver. *See Kazi*, 2012 U.S. Dist. LEXIS 180424, at *9 ("Under this clause, the absence of an express waiver . . . precludes a finding of an implied waiver.").

Here, by written agreement, GE explicitly reserved the right to not post interest to Ms. Stratton's Account without forever relinquishing its right to post interest at the contractual rate, unless GE expressly stated it waived the right in a signed writing.[109] Ms. Stratton did not produce a signed writing. Therefore, she has <u>no</u> evidence of GE's alleged express waiver. In other words, due to the non-waiver clause, Ms. Stratton has *no* evidence of the *only* way GE could waive its right to charge contractual interest. Accordingly, Ms. Stratton's mere inference of an implied waiver is insufficient as a matter of law, and the Court should affirm the district court's order.

### C.  Ms. Stratton Has Not Put Forth Sufficient Evidence Showing that GE Impliedly Waived its Right to Collect Contract Interest.

Even assuming Ms. Stratton could meet her burden of proving waiver by showing that GE impliedly waived its right to contract interest (which she cannot because of the non-waiver clause), Ms. Stratton's evidence of implied waiver is insufficient as a matter of law. Indeed, Ms. Stratton's evidence is not "evidence," but merely an unsupported inference she draws from GE's actions.

---

[109] *See Stratton*, 770 F.3d at 448 ("It may be that the discovery process could reveal some contractual provision that entitles PRA to collect some sort of interest.").

### 1. Ms. Stratton Presented No Evidence to Support Her Claims of Implied Waiver.

Ms. Stratton's *only* evidence of an implied waiver is that the amount owed on Ms. Stratton's account was the same at the time of charge-off as when PRA purchased the Account. Without evidence from GE, Ms. Stratton then proclaims that "[t]he only reasonable inference or credible explanation [for GE's actions] is that GEMB did so for some financial advantage."[110] Ms. Stratton goes on to conclude that this means GE must have waived interest.[111] Ms. Stratton has failed to meet her burden of proof.

As set forth above, t. Consequently, Ms. Stratton's supposition of waiver is easily explained away.

Furthermore, there are many other reasons GE could have elected to accrue interest, but to not post interest to the Account balance at the time of sale. Ms. Stratton's belief as to which reason GE chose is not "evidence" of waiver, and is wholly insufficient as a matter of law. *See Baptist Physician Hosp. Org. Inc. v. Humana*

---

[110] (Appellant's Brief, at 71).
[111] (*Id.*).
[112] (Bill of Sale & Forward Flow Agreement, [D.E. 64 at 2-4], (filed under seal) (emphasis added).

*Military Healthcare Servs.*, 481 F.3d 337, 352 (6th Cir. 2007) ("To prove waiver by course of conduct, there must be clear, unequivocal, and decisive acts of the party or an act which shows determination not to have the benefit intended in order to constitute a waiver."). Additionally, her mere guess as to what GE intended cannot carry the day. *See Terech v. First Resolution Mgmt. Corp.*, 854 F. Supp. 2d 537, 542 (N.D. Ill. 2012) (stating that plaintiff's allegation that the face value of the loan was the same on the date of charge off as on the date of sale "may not be sufficient to carry the day at trial, as they say nothing about the prior holders' actual policies"). Moreover, in Kentucky, "waiver will not be inferred lightly." *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 344 (Ky. Ct. App. 2001).

The mere fact that GE may not have sent Ms. Stratton account statements after charge-off is also irrelevant to the issue of waiver. This exact issue was considered by the court in *Van Slyke v. Capital One Bank*, and the court held that if an original creditor fails to send a periodic statement because the account was deemed "uncollectible," interest and fees could be added to the account without violating TILA. No. C 07-00671, 2007 U.S. Dist. LEXIS 64015, at *17-19 (N.D. Cal. Aug. 17, 2007). This exact same "failure to send periodic statements" argument has also been addressed and flatly rejected by several courts in the exact same context as this case. *See Terech*, 854 F. Supp. 2d at 543 (court stated it was "difficult to see what the discontinued statements add to Plaintiff's waiver argument."); *Bunce v. Portfolio Recovery Associates, LLC*, No. 14-CV-2149, 2014 U.S. Dist. LEXIS 159679, at *4 (D. Kan. Nov.

12, 2014) ("Waiver of further interest charges is not evidenced by the cessation of monthly statements.").

Also, Ms. Stratton's argument that GE waived the right to interest because her Account had a balance of $0.00 after charge-off has been struck down by courts around the country. In *Unifund CCR Ptnrs. v. Urban*, No. CV044000311S, 2005 Conn. Super. LEXIS 3481, at *1-4 (Conn. Super. Ct. Dec. 8, 2005), the debtor attempted to argue that his charge-off statement reflected that his account balance was $0.00. The Connecticut Superior Court summarily dismissed this argument:

> The defendant claims . . . that his account was $0.00 because of a "charge-off" of principal and interest, that meant he did not owe any money on his account and was no longer obligated to pay it. The term "charge-off" of course means no such thing. It is simply transferring the account to an unpayable category, and turning the account over for collection.

Id. at *3. Similarly, in *Miller v. Javitch, Block & Rathbone, LLP*, 397 F. Supp. 2d 991 (N.D. Ind. 2005), the court dismissed the plaintiff's FDCPA claim because the mere fact that the plaintiff's credit reports showed that the original creditor was reporting the balance of the debt as $0.00 did not create a factual dispute as to whether the plaintiff owed the original creditor's assignee the full balance due at the time of charge-off. 397 F. Supp. 2d at 1003; *see also Murphy v. Equifax Info.*, No. 12-CV-6409, 2013 U.S. Dist. LEXIS 178011, at *7-8 n.2 (E.D.N.Y. Dec. 11, 2013) (explaining that charge-off is merely an "accounting designation" and that "the zero balance prevents the debt's negative balance from appearing twice on a credit report by being listed by

44

both the bank and the collection agency").

Finally, Ms. Stratton's argument that GE intentionally reduced the balance of the Account on the charge-off statement to $0.00 is wrong. Federal law required GE to "charge-off" Ms. Stratton's delinquent account after 180 days. *See* Uniform Retail Credit Classification and Account Management Policy, 65 Fed. Reg. 36903, 36903 (June 12, 2000) ("In general, the [Uniform Retail Credit Classification and Account Management Policy: Established a charge-off policy for open-end credit at 180 days delinquency . . . ."). Thus, a $0.00 balance on the charge-off statement was not an intentional act, but a federally mandated requirement, and has no impact on whether GE could charge interest on the past-due balance after charge-off.

Here, without knowing GE's actual policies and accounting practices and whether GE applied those standard policies and practices to Ms. Stratton's Account, there is no way to know whether GE was still accruing, but not posting interest to Ms. Stratton's Account, ███████████████████████, or whether GE was not even accruing, but not waiving its right to charge contractual interest from the date of charge-off.[113] Without any evidence of how GE actually handled Ms. Stratton's Account, Ms. Stratton is left to guess as to the accounting practices GE applied to Ms. Stratton's Account post charge-off. As a matter of law, a guess as to intent will not

---

[113] *See* (Cloninger Report, [D.E. 54-6 at § 3], PageID# 486) ("Some banks during the 2008 to 2010 timeframe continued to charge interest to the account while attempting to collect the charged-off balance. The interest did not post the issuer's income accounts and thus did not inflate the issuer's income statement.").

45

give rise to waiver. *See Swafford v. Unifund CCR Partners*, No. 13-C-1572, 2013 U.S. Dist. LEXIS 149870, at *8-9 (N.D. Ill. Oct. 18, 2013) (without any allegations that Citibank acted uniformly regarding all customer accounts "it would be ***mere conjecture and speculation*** to assume that Citibank acted in a certain manner as to Swafford's account" (emphasis added)); *see also Frost v. Resurgent Capital Servs., L.P.*, No. 5:15-CV-03987, 2016 U.S. Dist. LEXIS 83317, at *10 (N.D. Cal. June 27, 2016) ("Plaintiff's waiver argument requires the court to infer that GE's alleged regular business practice of not collecting post charge-off interest applied in this case and that this application resulted in a waiver of GE's right to charge interest. In the absence of more specific facts, plaintiff's arguments require the court to make ***unsupported inferences*** and amount to ***mere legal conclusions***." (emphasis added)).

Thus, even though GE stopped posting interest to Ms. Stratton's Account after charge-off, that fact is not evidence that GE waived its right to ever collect contractual interest, especially because, among other reasons, ██████████ ███████████████████████████████████████████████████████████ and the Credit Card Agreement gave GE the explicit right to cease charging or posting interest without waiving its right to do so.

### 2.    Ms. Stratton Cannot Rely Upon the Evidence Presented in Another Case to Support Her Claims.

Ms. Stratton claims that *McDonald  v. Asset Acceptance, LLC*, 296 F.R.D. 513, 525 (E.D. Mich. 2013) supports her claims because it is "the only authority . . . in which a

case evaluated *evidence* on a waiver-of-contractual-interest issue in the context of a *summary judgment determination*, [and] it *granted* summary judgment for the FDCPA plaintiff."[114] While McDonald presented *evidence*, however, Ms. Stratton did not.

In *McDonald*, the plaintiffs provided evidence that the original creditors' business practice was to knowingly and intentionally not charge interest post-charge-off. *McDonald*, 296 F.R.D. at 525. The *McDonald* court thus determined that the original creditors' intended to waive interest. *Id.*

Unlike in *McDonald*, this Court only knows that GE did not post interest to Ms. Stratton's Account, but that interest may accumulate on the Account even if it was not posted.[115] From these facts, Ms. Stratton somehow concludes that the only "reasonable inference or credible explanation" is that GE "intended to waive its right to contractual interest." Essentially, Ms. Stratton asks the Court to ignore the fact that she took no steps to prove her allegations, and instead, to assume that, had she done so, she would have presented evidence similar to that presented in *McDonald*. Ms. Stratton cannot meet her burden in this fashion.

If this was not enough, in *McDonald*, unlike here, "the purchase agreements explicitly stated that the accounts do not include post charge-off interest and ***are only enforceable up to the Unpaid Balance***." *McDonald*, 296 F.R.D. at 525 (emphasis added). The sales documents between GE and PRA contain no such language and, in

---

[114] (Appellant's Brief, at 69) (emphasis in original).
[115] (Bill of Sale & Forward Flow Agreement, [D.E. 64 at 2-4], (filed under seal)) (emphasis added).

fact, ████████████████████████████████████████

██████████████

Ms. Stratton bears the burden of proving her claims. Ms. Stratton produced no evidence on which this Court may determine that GE knowingly, voluntarily, and intentionally waived its right to collect contractual interest. She cannot now rely on evidence cited in a different case from different financial institutions to argue that she somehow knows why GE did not post interest to her Account.[116] Accordingly, this Court should affirm the district court's entry of summary judgment in favor of PRA.

## IV.    The District Court Did Not Abuse its Discretion by Considering Portions of Ms. Cloninger's Expert Report and Affidavit.

The district court did not abuse its discretion in relying upon *portions* of the expert report and affidavit of PRA's expert, Jane Cloninger.[117] However, as set forth above, this Court need not review any of Ms. Cloninger's report to affirm the district court's decision.

The district court was explicit as to the limited portions of Ms. Cloninger's report it considered, and for which issues:

- [T]he Court has not considered Cloninger's opinion as it relates to whether PRA was permitted to retroactively add interest to Stratton's debt for the period pre-purchase.[118]

---

[116] Rather than Hercule Poirot (*see* Appellant's Brief, p. 63, line 14), this Court would require Carnac the Magnificent in order to divine GE's intent.

[117] "We review a district court's decision to admit expert testimony . . . for abuse of discretion." *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 293 (6th Cir. 2007).

[118] (Opinion & Order, [D.E. 99 at 23], PageID# 1131).

- The Court need not address this argument because it did not rely on Cloninger's opinion in interpreting [the Bill of Sale and Forward Flow Agreement].[119]

Thus, the district court only considered Ms. Cloninger's expert report "regarding the trade and custom of the industry" because it "has some relevance in that it aids the Court in interpreting the meaning of GE's conduct."[120] An expert report is proper for this purpose.

Federal Rule of Evidence 702 allows a qualified expert to "testify in the form of an opinion or otherwise if: (a) the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). It is undisputed that a qualified expert may testify regarding the customs and standards of an industry. *McGowan v. Cooper Indus.*, 863 F.2d 1266, 1273 (6th Cir. 1988) ("In this regard, Green's testimony on industry custom was helpful and should have been admitted under Rule 702 as specialized knowledge outside of a lay juror's experience.").

Here, the district court was tasked with determining whether the undisputed fact that the principal amount of Ms. Stratton's Account balance was the same amount at charge-off as on the date the Account was sold to PRA, was, as a matter of law, GE's knowing, intentional, voluntary act by GE to forever relinquish its right to charge interest on Ms. Stratton's Account.

---

[119] (*Id.*).
[120] (*Id.* at 24, PageID# 1132).

Ms. Cloninger's expert report helped the district court understand the meaning of GE's actions by providing information on customs and practice in the credit card industry. For example, Ms. Cloninger opined that "during the 2008 through 2010 time period, the industry custom and practice of not sending periodic statements to charged-off accounts was based on the determination that the account was not collectable."[121] Additionally, Ms. Cloninger stated that "[s]ome banks during the 2008 to 2010 timeframe continued to charge interest to the account while attempting to collect the charged-off balance. This interest did not post the issuer's income accounts and thus did not inflate the issuer's income statement."[122]

Thus, Ms. Cloninger's expert report provided specialized knowledge of the customs and trade practices in the distressed credit card industry that gives context to why the charge-off amount may have equaled the principal balance at the time Ms. Stratton's Account was sold to PRA. This specialized knowledge of the custom and trade practice in the distressed credit card industry was all that was considered by the district court.[123] Accordingly, the district court did not abuse its discretion by relying on Ms. Cloninger's report in determining that Ms. Stratton failed to meet her burden to prove that GE impliedly waived its right to collect contract interest.

---

[121] (Cloninger Report, [D.E. 54-6 at § 2], PageID# 485).
[122] (*Id.* at § 3, PageID# 486).
[123] (Opinion & Order, [D.E. 99 at 24], PageID# 1132) ("Cloninger's information regarding the trade and custom of the industry has some relevance in that it aids the Court in interpreting the meaning of GE's conduct.").

**V.    The District Court Properly Denied Ms. Stratton's Motion for Summary Judgment.**

As is fully explained in the foregoing sections, because the district court correctly determined that Ms. Stratton failed to prove her claims, this Court should affirm the district court's denial of Ms. Stratton's Motion for Summary Judgment.

**VI.    Bona Fide Error**

In direct response to Ms. Stratton's Brief, PRA notes that the fact that PRA did not have a copy of the Credit Card Agreement at the time it filed the Collection Complaint is irrelevant. *See Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 331 (6th Cir. 2006) (filing a debt-collection lawsuit without the immediate means of proving the debt does not violate the FDCPA).

Also, contrary to Ms. Stratton's assertion, a mistake of state law can qualify for the bona fide error defense. The U.S. Supreme Court has <u>never</u> held that the bona fide error defense does not apply to errors of state law, only that the bona fide error defense does not apply to a debt collector's "mistaken interpretation of the legal requirements of the FDCPA." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S.Ct. 1605, 1608, 1610 n.4 (2010). PRA's alleged mistake of state law as to its entitlement to prejudgment interest cannot form the basis of an FDCPA violation simply because a court eventually disagreed with PRA, especially in light of the procedures maintained by PRA to prevent such mistakes, which are fully set forth in PRA's motion for summary judgment. (PRA's Motion for Summary Judgment, [D.E.

54 at 28-37], PageID# 423-32); *see also Heintz v. Jenkins*, 514 U.S. 291, 295-96 (1995) ("[W]e do not see how the fact that a lawsuit turns out ultimately to be unsuccessful could, by itself, make the bringing of it an 'action that cannot legally be taken.'").

Ms. Stratton cites to *Wise v. Zwicker & Assocs., P.C.*, 780 F.3d 710, 713 (6th Cir. Ohio 2015) for the proposition that "mistakes of state law can give rise to liability" under the FDCPA. While there are instances where mistakes of state law **can** give rise to liability, this case is not one of those instances. Indeed, there are a plethora of FDCPA cases holding that the bona fide error defense applies where state law is so unclear, that a collector cannot know, and should not have known, that its actions were ostensibly not allowed by state law. *See* (PRA's Motion for Summary Judgment, [D.E. 54 at 35-36], PageID# 430-31).

Just a few years ago, after the *Jerman* decision was issued, a similar FDCPA case applied the bona fide error defense based on a mistake of law to dismiss an allegation that the collector's lawsuit was untimely. In *Hare v. Hosto & Buchan, PLLC*, 774 F. Supp. 2d 849, 854-856 (S.D. Tex. 2011), a defendant filed a state court lawsuit to enforce an arbitration award under the FAA and the state court ultimately dismissed the underlying collection case as untimely. The consumer then filed an FDCPA action asserting that the untimely filing of the state court lawsuit violated the FDCPA.

In the FDCPA action, the federal district court granted the debt collector's motion for summary judgment. The federal court noted that in the Fifth Circuit, it was unclear when the debt collector's collection lawsuit was barred. Noting that

*Heintz* allows the assertion of good faith arguments in a state court lawsuit and that *Jerman* "does not hold that all legal errors are automatically violations of the FDCPA,"[124] the Southern District of Texas court applied the bona fide error defense and granted summary judgment. *Id.* at 856.

Here, given the Sixth Circuit's new interpretation of Kentucky law in the first appeal, and the fact that four (4) state judges and four (4) federal court judges are split over the interpretation of KRS 360.010,[125] and that the Kentucky Supreme Court has decided to weigh in on the issue,[126] if this Court still decides PRA was not entitled to seek prejudgment interest, the bona fide error defense should be applied. Simply put, PRA should not, and could not, have known that Kentucky law ostensibly prohibited routine requests for prejudgment interest on a liquidated amount.

---

[124] *Hare*, 774 F. Supp. 2d at 854 (citing *Jerman*, 559 U.S. at 1610 n.4).
[125] The Kentucky trial court in *Harrell* and the district court in this case found that KRS 360.010 did not preclude PRA's request for prejudgment interest, while the Sixth Circuit and the Kentucky Court of Appeals both issued divided opinions.
[126] *See* n. 8, *supra*.

## **CONCLUSION**

For the foregoing reasons, the Court should affirm the judgment of the district court in its entirety.

Respectfully submitted,

*s/ Joseph N. Tucker*
Joseph N. Tucker
R. Brooks Herrick
DINSMORE & SHOHL, LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky 40202
(502) 540-2360

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 13,413 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and 6 Cir. R. 32(b).  I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 with 14-point Garamond.

_s/ Joseph N. Tucker_
JOSEPH N. TUCKER

## DESIGNATION OF RELEVANT LOWER COURT DOCUMENTS

| Record Entry | Description | Page ID# Range |
|---|---|---|
| 10 | Amended Complaint | 90-96 |
| 10-1 | State Court Complaint | 97-98 |
| 12 | PRA's Motion to Dismiss | 101-117 |
| 17 | Opinion & Order | 175-191 |
| 41 | PRA's Motion for Leave to File Amended Answer | 284-287 |
| 54 | PRA's Motion for Summary Judgment | 396-433 |
| 54-3 | Credit Card Agreement | 442-444 |
| 54-5 | Ms. Stratton's Discovery Responses | 447-461 |
| 54-6 | Cloninger Report | 462-493 |
| 54-7 | PRA's Discovery Responses | 494-504 |
| 56-2 | Memorandum in Support of Ms. Stratton's Motion for Summary Judgment | 541-556 |
| 59 | Ms. Stratton's Response in Opposition to PRA's Motion for Summary Judgment & the Motion to Strike the Credit Card Agreement | Under Seal |
| 64 | Bill of Sale & Forward Flow Agreement | Under Seal |
| 83 | PRA's Response in Opposition to Motion to Strike the Credit Card Agreement | 983-994 |
| 83-2 | Privette Affidavit | 996-1005 |

56

| Record Entry | Description | Page ID# Range |
|---|---|---|
| 85 | Ms. Stratton's Reply in Support of her Motion for Summary Judgment | 1042-1056 |
| 99 | Opinion & Order | 1109-1143 |
| 100 | Final Judgment | 1144 |
| 102 | Notice of Appeal | 1147 |

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2016, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system.

The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

*s/ Joseph N. Tucker*
JOSEPH N. TUCKER

10540673v1

58